84 So.2d 899 (1956)
Sidney BROUSSARD et ux.
v.
Walter BROUSSARD et al.
No. 4116.
Court of Appeal of Louisiana, First Circuit.
January 23, 1956.
*900 Peter C. Piccione, Joseph L. Piccione, Lafayette, for appellants.
Davidson, Meaux, Onebane & Nehrbass, Lafayette, for appellees.
LOTTINGER, Judge.
Plaintiffs appeal from judgment dismissing their suit as against defendant insurer, Traders and General Insurance Company, upon an exception of no cause of action. Since no objection was made to admission of the evidence, it was properly taken and considered.
Suit was dismissed as against the insurer based upon the alleged breach of the "cooperation clause" by its insured, codefendant Walter Broussard. The pertinent provision of the cooperation clause in the policy issued by defendant insurer to Walter Broussard (and covering operation of the 1948 Dodge in which plaintiffs were injured while riding as passengers) is:
"The insured shall cooperate with the company, and upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of suits."
This damage suit arose from an accident of December 4, 1953, when the Broussard Dodge collided with a 1½-ton truck, which had made a left turn across U. S. Highway 90 into the former vehicle's traffic lane. The driver of the truck suffered severe burns and died shortly thereafter.
Immediately after the accident, the insured (Walter Broussard, codefendant) who had been driving his own car, informed the investigating policemen that the accident occurred when the truck suddenly turned just 15 feet in front of him across his traffic lane, when Broussard was proceeding at a speed of 40-45 mph. To the same effect was his oral statement the following day to his insurance agent. This version was repeated in an unsworn written statement taken on December 7, 1953, by an adjuster of his insurer, codefendant herein.
Broussard now states that these statements were false and given from a fear of prosecution for negligent homicide or reckless driving, and at the suggestion or with the consent of his brother, Sidney Broussard, plaintiff herein.
Broussard insisted on the trial of the exception on March 11, 1955, that the version given by him then and by ex parte deposition taken by his own insurer on December 28, 1954 (at which Broussard was not represented by his own counsel) was instead the correct version. These latter accounts in general indicate his speed prior to the accident to be 60-65 mph and that the truck commenced its turn when Broussard was approximately 300 feet from the point of the accident. Of course, this latter version (unlike the initial one) makes it more likely that Broussard was guilty of contributory negligence, and that therefore Broussard's insurer is liable to plaintiffs, Broussard's brother and sister-in-law.
In addition, on December 8, 1953, Broussard gave a written statement to plaintiffs' attorney which, while somewhat vague, indicates a speed of 60 mph slowing to 45 mph just before the impact, and somewhat greater opportunity to observe the truck's left turn across his path than the statement given to his insurer's adjuster the previous day. His insurer did not learn of this statement nor of his change of position until December of the following year after suit was filed when Broussard was requested to contact insurer's counsel for the preparation of the defense of the case *901 which was filed and the deposition above referred to taken on December 28, 1954 followed. Broussard explains his greater frankness on the latter occasions by stating he was not afraid such latter statements would be used in criminal prosecutions against him. Despite Broussard's reason for making a change in the latter statements or deposition, we must not lose sight of the fact that on December 7, 1953 he made a written statement to an adjuster of his insurer and on the following day December 8, 1953 made an entirely different or contradictory written statement to plaintiffs' attorney who was a total stranger to him.
The District Court sustained the exception, holding that the inconsistent versions of the accident constituted a breach of the cooperation clause, and further that despite their denials, the insured was cooperating with plaintiffs (his brother and sister-in-law) in the preparation of their claim against his own insurer.
Our brothers of the Orleans Court of Appeal recently summarized the Louisiana rule concerning the defense of non-cooperation in Elba v. Thomas, La.App., 59 So.2d 732, at page 734:
"`The defendant insurer urges a separate and distinct defense against plaintiff's recovery, in that the insured violated the assistance and cooperation clause of its policy contract. There is no proof of such violation. Nor could it be urged that the insured, had he testified favorably for his wife, would have violated this clause. As was held in Levy v. Indemnity Insurance Co., La.App., 8 So.2d 774 and cited in State Farm Mutual Automobile Ins. Co. v. Koval, 10 Cir., 146 F.2d 118, the purpose of the cooperation clause is to require the insured to disclose all the facts within his knowledge, and otherwise aid the company to determine its liability under the policy. It is not the obligation of an insured to assist the insurance company to defeat its liability. The obligation of the company is to pay the damage if liable, and not to refuse to pay it, regardless of liability. Further the lack of cooperation that would defeat recovery must be in some substantial and material respect that results in prejudice to the insurer. * * *'" (Italics ours).
In this suit by a wife against her husband's insurer, the defense of non-cooperation was not allowed, despite the husband-insured's misstatement "confusion, for whatever cause"of the location of the accident with reference to the intersection. Similarly, in Lindsey v. Gulf Insurance Co., La.App., 7 So.2d 757, the defense of noncooperation was disallowed when an initial deliberate misstatement was corrected in advance of trial so as not to prejudice the defense of the cause. In Levy v. Indemnity Insurance Co., La.App., 8 So.2d 774, 776 (certiorari denied), it was held that the willingness of the named and additional assured to furnish all information to their plaintiff-brother's counsel did not constitute failure on the part of the assured to cooperate. In a plaintiff-passenger-wife's suit against her husband's insurer, this Court itself noted that maintaining normal social intercourse and necessarily discussing the accident and the resultant lawsuit does not constitute "collusion," Scarborough v. St. Paul Mercury Indemnity Co., La.App., 1 Cir., 11 So.2d 52, at page 55.
Thus the rule in Louisiana, and also the majority rule elsewhere, is that to defeat recovery the misrepresentation must be material. We find in 5 American Jurisprudence verbo Automobiles Section 545 the following:
"Co-operation by Insured.Sometimes there is included in liability or indemnity policies a clause, positive in its character, providing that the assured shall co-operate with and assist the insurer in resisting claims, etc., or, more particularly, that he shall aid in securing information, evidence, and the attendance of witnesses, in effecting settlements, in prosecuting appeals, etc. A clause of this character is a perfectly reasonable one, framed with the object of protecting the insurance company against the risk of collusion between *902 the assured and persons claiming damages for alleged torts, and is a material condition of the policy, the violation of which by the assured forfeits his right to claim indemnity under the policy. The insured must, therefore, comply with such provision, as for a breach thereof in some material respect, the insurer is justified in withdrawing from the defense of the action brought against the assured and canceling the protection to him.
"On the other hand, co-operation may be excused as a matter of law if improperly demanded. The assured `is not to be a mere puppet in the hands of the insurer, he is under no obligation to permit a sham defense to be set up in his name, nor can he be expected to verify an answer which he does not believe to be true; he cannot evade personal responsibility, and hence he is not bound to yield to any demand which would entail violation of any law or ethical principle; but he cannot arbitrarily or unreasonably decline to assist in making any fair and legitimate defense.'"
We find in 29 American Jurisprudence verbo Insurance the following:
"789. Generally.In liability insurance policies, provisions are usually to be found requiring the co-operation and assistance of the insured in resisting claims, etc., or, more particularly, requiring that he shall aid in securing information, evidence, and the attendance of witnesses, in effecting settlements, in prosecuting appeals, etc. Such a provision is commonly called a `co-operation clause.' It is in the nature of a condition precedent to liability on the insurer's part; and a breach of the provision by the insured constitutes, in the absence of a waiver by or estoppel of the insurer, a defense to liability on the policy, even though it does not appear that harm resulted to the insurer from such breach. To constitute a breach of a co-operation clause by the insured, however, there must be a lack of co-operation in some substantial and material respect; a technical or inconsequential lack of co-operation or a misstatement to the insurer is immaterial in such respect. A co-operation clause is breached, and the insurer is released from its contract, by the unjustifiable refusal of the insured to permit the insurer to make any defense or by the arbitrary refusal on the part of the insured to sign or execute a pleading legally required in maintaining a valid and available defense. The rule is otherwise where the insurer requests the insured to plead and rely upon a ground of defense which does not in fact exist. Co-operation by the insured is excused if improperly demanded by the insurer, and does not include assistance in a sham defense by the insurer; nor can the insured be required to testify falsely, or favorably to the interests of the insurer. Furthermore, there is no breach of the co-operation clause merely because the insured, by legitimate means, and after a full disclosure of the facts surrounding an accident, seeks to induce the insurer to settle a claim therefor against the insured, or because the insured disclosed to the person injured or his representative the fact that he carries insurance. It has been held that a lack of good faith is not to be inferred merely from relationship between the insured and the person injured.
"790. Duty to Disclose Information. A co-operation clause in a liability insurance policy requires that there shall be a fair, frank, and substantially full disclosure of information reasonably demanded by the insurer to enable it to prepare for, or to determine whether there is, a genuine defense. In such respect, refusal of a druggist who is insured against liability for mistakes to state the details of a mistake on account of which he is sued, unless the insurer will undertake in any event to pay any judgment which may be recovered against him, is such a breach of a condition in the policy requiring his co-operation and assistance as to *903 vitiate the policy. While a co-operation clause may require the insured, when requested for such information, to give full particulars of the accident, he need not go into unnecessary details or make an exhaustive investigation of the circumstances attending the accident."
"792. Making of False Statements to Insurer.An unintentional and accidental mistake in a statement of facts, made by the insured under a liability policy, especially if afterward seasonably corrected, does not establish such a lack of co-operation as will create a defense for the insurer. Moreover, the mere inadequacy or untruthfulness of a statement made by the insured to the insurer, as to the circumstances of an accident, does not of itself necessarily constitute a breach of a co-operation clause. However, there is a breach of a co-operation clause where the insured untruthfully or collusively assumes liability for the accident, or misrepresents the facts to the prejudice of the insurer. Likewise, and although there is authority to the contrary where it does not appear that information, favorable to the defense, given by the insured was intentionally false, it is generally held that it may be a breach of a co-operation clause where the insured, in fact to blame for an accident, gives the insurer an account thereof favorable to the defense, thereby misleading the insurer to its prejudice, especially where the insured, in the trial of the action against him, admits responsibility for the accident.
"793. Modification or Repudiation of Prior Statements to Insurer.The mere fact that the insured modifies or repudiates statements as to the accident and attending circumstances favorable to the defense does not necessarily constitute a breach of a co-operation clause of a liability policy, but such modification or repudiation may constitute a breach if fraudulent or a result of a collusive attempt to help the injured person.
"794. Variance between Statements and Subsequent Statements or Testimony.In determining whether a variance between statements made to an insurer and subsequent statements or testimony constitutes a failure to co-operate with the insurer, consideration should be given to the extent of such variance or discrepancy, since a mere discrepancy in minor detail or an honest mistake between the several statements of the facts surrounding the accident is not sufficient to avoid the policy, whereas a material, intentional, or fraudulent variation does effect a failure to co-operate."
The court must be alert to protect insurers in circumstances where close family relationship or association tend to ally the sympathy of the insured with those to whom the insurer may be liable; and, normally, in evaluating credibility such factors are properly taken into account.
On the other hand, the courts must recognize that insurance policies protect not only the insured, but the general public, and insurers should not escape their liability except through conduct on the part of their insured which materially prejudices them.
With regard to the instant case the only witnesses who testified were the insured driver, and the two plaintiffs, passengers in the car involved in the accident; the truckdriver, sole occupant of the other vehicle, is dead, and his testimony is not available. The District Court refused to believe the testimony of these witnesses, who denied discussing the insurance claim or accident together at any length, and further from this evaluation of the credibility of the witnesses found that there was "collusion" between the witnesses; which must amount to a factual finding that the second, or less favorable to the insurer, version of the accident was the false one, and was designed to enable the insured's brother and sister-in-law to recover against his insurer.
*904 We do not believe this factual finding to be manifestly erroneous in the special facts and circumstances of this case, where the sole surviving witnesses are all so closely related and the insured has in actuality an interest and sympathy adverse to his insurer, and where no other evidence was produced to corroborate that the second version was the true one. For in such case, the conduct of the insuredsole witness other than plaintiffsin testifying to an untruthful unfavorable version of the accident has indeed materially prejudiced the insurer's defense of the claim.
For the above and foregoing reasons, the judgment of the lower court is affirmed; since this suit is in forma pauperis, plaintiffs-appellants will not be assessed with the costs hereof.
Judgment affirmed.