LOTTINGER, Judge.
This suit arises out of an automobile accident which occurred on February 10, 1958 at the intersection of U. S. Highway 190 and the Albany-Springfield Highway, which is located in the town of Albany in the Parish of Livingston. The plaintiff, Mrs. Baham, was injured while a guest passenger in an automobile driven by her daughter, the defendant, Mrs. Stilley. The latter’s husband, who was also a passenger in the automobile, carried liability insurance with Southern Farm Bureau Casualty Insurance Company subject to a limit of $25,000 for injury to any one person. The other vehicle involved was owned and driven by a Negro evidently not financially responsible as he was not made a party to the suit.
*885 The suit was tried before a jury and resulted in a verdict in favor of the mother and against the daughter in the amount of $30,000. While Southern Farm was not a party to the suit, the matter was defended by its counsel under the terms of the policy. A statement was made by defendant’s counsel at the outset of the trial that there was possibly a lack of cooperation and/or collusion, which could only be determined after hearing the various witnesses and all rights were reserved with respect to a defense on these grounds.
An application for a new trial was denied ■subsequent to which defense counsel with■drew as attorneys for the defendant on the ground that she had violated the cooperation clause by colluding with her mother for the express purpose of the latter obtaining a favorable verdict and judgment.
Mrs. Baham then filed garnishment pro■ceedings against Southern Farm who answered in the negative the interrogatories which were propounded to it. The matter ■was then heard on a rule to traverse the •answers which resulted in a judgment against the garnishee who has perfected •a suspensive appeal.
The record reflects that the accident was investigated by Southern Farm and that ■signed statements were secured from both Mr. and Mrs. Stilley. The statement dated March 13, 1958 given by the latter reads .as follows:
“My name, age and address are correct as above stated. I am white, female, married and American. I live with my husband on our dairy farm south of Loranger, La. On February 10, 1958 at about 2:30 P.M. I had an accident while driving our Dodge through Albany, La. I was driving. My mother was sitting on the right side ■ of the front seat and my husband was sitting on the rear seat. We were traveling east on U. S. Highway No. 190 about 25 mph. As I approached the ■traffic light in Albany a car made a left •turn across my path. When I was about two or three car lengths away from this car it pulled in my lane in front of me. I applied my brakes but could not avoid the accident. The driver of this car did not give any signals. I do not feel that I am in any way at fault in this accident. I have had the above statement read to me and it is true to the best of my knowledge.
“/s/ Mrs. Denral Stilley”
In marked contrast to the above, at the trial which took place on January 20, 1959, Mrs. Stilley gave the following testimony:
“Q. Do you know how fast you were driving on this highway prior to getting to Albany? A. Before I got to Albany — I say around 45 to 50 and slowed to 35 to 40 when I come into Albany.
“Q. Were your windows fogged up any? A. Yes, sir.
“Q. Did you have your windshield wipers working? A. Yes.
“Q. When did you first see this car coming being driven by this Negro? A. I was getting pretty close to him when I seen him.
“Q. How far away would you say you were — fifty or twenty five feet? A. I say fifty.”
“Q. And you can’t say exactly how far but you think about 50 feet away from him when you first saw him ? A. Yes.
“Q. What was he doing when you first saw him? A. Well, I couldn’t tell you because the vision was poor and I couldn’t see what he was doing.
“Q. How fast were you going when you first saw him? A. I say 35.
“Q. Did you immediately apply your brakes when you first saw him? A. I froze, I guess, I don’t know just what I did.
“Q. You went straight on into him? A. I suppose I did and I hit him.
*886 “Q. Now, was there any other traffic coming to meet you? A. No.”
“Q. Can you look at this picture and see a very wide black topped shoulder? A. Yes.
“Q. If you had seen the Negro’s car is there enough room judging from this picture for you to come around this car on the left? A. Yes, Sir, I think I could have but I didn’t at that time. I can’t say what happened but I just didn’t do it.
“Q. You just froze and went directly ahead? A. Yes.
“Q. Did you apply your brakes? A. Yes, when I froze I froze with the steering wheel, too.
“Q. Do you know whether he was moving or stopped? A. I don’t know definitely. I couldn’t say whether he was stopped because it happened so quick.
“Q. Mrs. Stilley, this is a straight road? A. Yes.
“Q. There is a slight curve but visibility up and down — there is nothing in the way to keep you from seeing it before you did? A. No, sir.
“Q. Other than the bad weather and moisture on the inside of your car? A. No.
“Q. There were no big van trucks or anything of that nature, you just didn’t see him? A. I just didn’t see him.”
Further, on the hearing of the rule to traverse the answers of the garnishee, Mrs. Stilley gave the following testimony:
“I would ask the court to look at this signature, and will you read that statement and tell the court whether it is a fact that everything in that statement is true as to how the accident happened? A. (The witness read the statement). I was going more than any 25 miles an hour. I was going somewhere between 35 and 50.
“Q. What were you doing — 35 or 50? A. Somewhere between that. Somewhere in that neighborhood. I was speeding.
“Q. In that statement you said you were going 25. A. I didn’t make that statement. And far as me seeing the car pulling in my path, the car was in my path when I seen it. I had poor vision because it was raining and the glasses were smoked.
“Q. Was it raining hard? A. It was a misty day and had been raining off and on all day.
“Q. Did you have your windshield wiper going? A. Yes, but that don’t clear up the inside of the car. It’s not true.
“Q. Is any of it true? A. The time of the accident and me driving and my mother and husband being in the car is true but I was speeding and I don’t know how long the man had been there. He might have been there two or three hours. I know when I saw him I just froze.
“Q. You used that expression that you just froze in your testimony in the previous trial did you not? A. I think so.”
It is interesting to compare the testimony of Mrs. Stilley with respect to “freezing” with Article 8 of the plaintiff’s petition which reads as follows:
“That Mrs. Myrtle Stilley, due to the rain, bad visibility and fog on her windshield, did not see the Lonnie Payne vehicle, until she was nearly on it and then she froze with fear and failed to turn her steering wheel and continued straight into the automobile driven by Lonnie Payne.” (Emphasis supplied.)
Mrs. Stilley explains the variation between the declaration in her statement of March 13, 1958 and her testimony as quoted above by saying that she scarcely remembered signing the statement as she- *887 was in a nervous condition and under sedation at the time. As opposed to this, however, is the testimony of Mr. A. J. Abshire, the adjuster who took the statement, to the effect that Mr. Stilley was present when he prepared the statement in their home, that both of them appeared to be normal, that he prepared it from the facts as disclosed to him, that he read it to Mrs. Stil-ley and that he handed it to her and, after looking at it, she signed it.
According to the record Mr. Denral Stil-ley likewise signed a statement with reference to the accident. Same was introduced but we cannot find same in the record. Be that as it may, however, in the deposition of Mr. Stilley taken on May 22, 1958 reference is made to said statement and part of which appears to be as follows:
“As we approached the stop light in Albany it was green for us. We didn’t have to stop, slow down or nothing. The light was green so we kept going. I had noticed an on-coming car. After we passed under the traffic light this on-coming car made a left turn in front of us. When he turned in ■front of us we were only fifteen or twenty feet from him.” “My wife applied the brakes but couldn’t avoid the accident. I do not know that the accident was caused by any negligence on the part of my wife who was driving the car. I consider her a careful driver. When this accident happened she had full attention on her driving. She wasn’t distracted by anyone in our car. I feel that the driver of the other car who was a Negro was totally at fault in causing this accident.”
From this it appears that Mr. Stilley •exonerated his wife from all negligence as a result of the accident. Be that as it may, however, in his deposition he appears to be very vague and indefinite and could not estimate the speed that his car was traveling for the reason that he was not noticing because he was riding in the back seat. He likewise could not estimate the distance they were from the intersection when the other car made the left turn in front of them. He was likewise asked in his deposition the following:
“Q. Could she have avoided that accident? A. Now, I don’t know that.
“Q. I know you don’t know now but could she have avoided the accident? A. I won’t say.”
The plaintiff. Mrs. Lola Linda Baham likewise gave testimony under a deposition and was a witness in the case. She stated however that she did not know anything about how the accident occurred. She did state nevertheless that she had ridden with her daughter several times and her daughter was a careful driver. She stated further that her daughter was not speeding on this occasion because it was raining.
A very similar situation to that presented in the instant case was before us in the case of' Broussard v. Broussard, La.App., 84 So.2d 899, wherein we held that there was a breach of the cooperation clause when the driver, who had originally stated that the accident was caused by a truck making a left turn just fifteen feet in front of him when he was driving at 40 to 45 miles per hour, later testified that the truck started making the turn at approximately 300 feet from the place of the accident at which time his speed was from 60 to 65 miles per hour. We believe our holding in the Broussard case and the authorities cited therein are applicable here.
Counsel for plaintiff seek to distinguish the holding in the Broussard case on two grounds, first, that the garnishee never attempted to take the deposition of Mrs. Stilley or to obtain further statements after the original one and, second, that the deposition of a Mr. Kinchen, an apparently disinterested eye-witness, taken on September 22, 1958, would show that Mrs. Stilley was speeding at the time of the accident, thus putting the garnishee on notice or at least on inquiry.
*888 In answer to the first point, we observe the contents of a letter addressed to garnishee’s counsel dated November 10, 1958, which reads as follows:
“Adams & Reese
“Attorneys at Law
“847 National Bank of Commerce Bldg.
“New Orleans 12, La.
“Attorney Mr. George C. Ehmig
“Re: Mrs. Lola Linder Baham vs. Southern Farm Bureau Casualty Insurance Co. Civil Action No. 7610 on docket of U.S.D.C. New Orleans Div. Your file No. 4904
“Dear Mr Ehmig:
“I have received a copy of Mr. Sims’ letter addressed to you on the date of October 24, 1958, and do not understand why this case cannot be settled.
“My husband is presently ill and I am very much in distress about this whole thing.
“I never did think my mother would try to get my property. But Mr. Sims has convinced her that if she can get judgment against my property that then I can make the Southern Farm Bureau pay this Judgment off. The thing that worries me is that if he does get a judgment against my property and the Southern Farm Bureau doesn’t pay it off then my husband and I will be in a terrible fix.
“I have consulted my attorney on this matter and he tells me that since my mother was a guest passenger in my car and that I was driving a bit fast in the rain that she has every chance in the world of collecting from me and therefore, I cannot understand you don’t go ahead and settle this case as quickly as possible.
“Please let me know what you plan on doing as this attorney told me that if things went too far I better employ a lawyer to represent me and I intend to do this if this case isn’t settled.
“Yours truly,
7s/ Myrtle Stilley”
The above was certainly sufficient to raise some suspicion in the minds of counsel) but we fail to see any particular reason for taking the assured’s deposition. Be that as it may, however, the record reflects that, an attempt was made by them to take Mrs.. Stilley’s deposition but were prevented from doing so as she was caring for her husband who had suffered a stroke. We might point out further that in the Broussard case, the insurer was aware of Broussard’s, change of position more than a year after the suit was filed hut long prior to the actual trial of the case.
As we understand the second point of distinction raised by counsel for plaintiff the deposition of Kinchen was such as to. ■put the garnishee on notice and, in spite-of this, it did nothing further to enlighten-itself as to the true facts. The answer to. this proposition, however, is that if there was in truth collusion, it cannot be avoided) on the ground that the insurer did not take the proper steps to circumvent its effect.
We recognize the rule in the Broussard! case, and we adhere to it here, that the breach of the cooperation clause must be material and that it must be prejudicial, and we think Mrs. Stilley’s conduct was-just that. Her original statement (given at a time unsuspicious) showed her to be proceeding at a legal rate and to be free of negligence, whereas her testimony at the trial shows her to have been speeding and having failed to see that which she should have seen — all of which goes to-the very heart of the case.
The defense of lack of cooperation is fully substantiated and the judgment appealed from must, therefore, be reversed..
For the reasons assigned the judgment-appealed from is reversed and it is ordered,, adjudged and decree that the rule to traverse the answers of the garnishee be and the-same is hereby dismissed, at plaintiff’s cost-
judgment reversed.