REID, Judge.
This suit arises out of an automobile accident which occurred in the early hours of the morning of September 10, 1965, while plaintiff, Ella Marie Weatherford King, then an unemancipated minor, was riding as a guest passenger in a 1963 Chevrolet 4-door automobile owned by Otis E. King, doing business as King Cabs, at the time being driven by his son and employee, Milton J. King. Plaintiff, Louis Elgin Weatherford, is the father of Ella Marie Weatherford King. Plaintiffs allege that following the delivery of two passengers to their destination in the Parish of East Baton Rouge, the cab being driven by Milton J. King was returning to the cab stand in Plaquemine, Louisiana, and while driving in a southerly direction on Louisiana Highway No. 1 in West Baton Rouge Parish, the driver of the cab lost control of the automobile, it left the highway and caused considerable physical damage to the said vehicle and inflicted physical injuries on plaintiff, Ella Marie Weather-ford King. The alleged injuries to Ella Marie Weatherford King were a laceration of the left eyebrow, generalized bruises and severe abrasions of the extremities, a compression fracture of the anterior part of the body — of that vertebra known as L-3, a severe and acute lumbosacral strain, all of which they alleged caused great mental pain and anguish and resulted in both temporary and permanent disability.
Otis E. King, doing business as King Cabs, and its insurer, New York Fire & Marine Underwriters, Inc., filed a general denial and further alleged that at the time of the accident Mrs. King was occupying the King vehicle as a social guest and that she was dating Milton King at the time of the accident and has since married him. Defendants further alleged that on the night of the accident, Hurricane Betsy struck the area in which the car was being driven and that the mishap occurred as the result of extreme weather and strong winds rather than any negligence on the part of the driver. In the alternative, the defendants alleged contributory negligence on the part of Ella Marie Weatherford King in leaving a place of safety and going upon the highway during the time a hurricane was present, for her own social pleasure and convenience, and in failing to warn the driver of any imminent or peril danger or negligence, tirtie and circumstances considered. Defendants further allege that Ella Marie Weatherford King assumed the risk of any accident and injury to herself in leaving a place of safety on the night Hurricane Betsy struck and in continuously occupying throughout the night an automobile that was being driven upon the highways in the presence of high winds and heavy rain and contrary to the recommendations and advice being repeatedly issued on the date and during the time Hurricane Betsy was in the immediate area. Defendants also filed an exception of no right and no cause of action which was overruled, and on December 15, 1966, the case was tried on the merits, after which judgment was rendered in favor of the defendants and against the plaintiffs, dismissing plaintiffs’ suit with prejudice at their costs and fixing the fee of Dr. Richard M. Moon at $50.00 and taxing the same as cost.
*920 The first and most important question to be considered is which of the two parties involved must bear the burden of proof. It is the contention of the plaintiff-appellant that where a motor vehicle leaves the roadway and becomes involved in an accident, a presumption of negligence arises and that a guest passenger in a motor vehicle is not required to prove that the accident was caused by the negligence of the defendant. While the counsel for the plaintiff-appellant does not specifically deal with the doctrine of res ipsa loquitur, it is evident under the facts as presented in this case that this doctrine should be invoked. The doctrine of res ipsa loquitur is an evidentiary rule, the applicability of which is to be determined at the conclusion of the trial and is in no' way governed by the rules of procedure; and, therefore, it is not necessary that it be specifically pleaded by the plaintiff. The doctrine of res ipsa loquitur is generally applied whenever an injury has been sustained and when such an injury has been caused by an instrumentality, under the control of the defendant which does not ordinarily cause injury unless there is negligence. In such cases, the very fact of the injury itself will be deemed as evidence to support recovery and the burden is then placed upon the defendant to exculpate himself from the negligence. In instances where an automobile leaves a roadway and injuries result to guest passengers, it is sufficient for guest passengers to show only that the automobile did, in fact, leave the highway and that injuries were sustained as it must be presumed that an automobile being operated in a careful and prudent manner will not leave the roadway. Fetterly v. McNeely, La.App., 77 So.2d 757; Harris v. Vardado, La.App., 94 So.2d 74; Gulf States Utilities Company v. Guidry, La.App., 183 So.2d 122.
In the present case, the Trial Judge did not submit written reasons for judgment and for this reason, it is difficult to determine whether or not he had applied the doctrine of res ipsa loquitur, but found that the defendant had overcome the presumption arising from the applicability of this doctrine or whether he failed to apply the doctrine and found as a matter of fact that the plaintiff had failed to sustain its burden of proof. We must, therefore, deal with this case according tO' our own notions and from the evidence as presented, it appears obvious that the doctrine of res ipsa loquitur should be applied in this case and the burden of proof be placed upon the defendant to exculpate himself from the presumption of negligence.
The primary defense asserted by the defendants is that the accident was caused by the winds of Hurricane Betsy and that these winds constituted an “act of God”, thereby relieving the defendant of any negligence. It is the position of the plaintiff that the winds of Hurricane Betsy did not constitute an “act of God” and the plaintiff cites the case of Rector v. Hartford Accident and Indemnity Company, of Hartford, Connecticut, 120 So.2d 511 (La.Ct. of Appeal, First Cir.1960). In this case the court defined an “act of God” to be:
“A providential occurrence or extraordinary manifestation of the forces of nature which could not have been foreseen and the effect thereof avoided by the exercise of reasonable prudence, diligence and care, or by the use of those means which the situation renders reasonable to employ.”
Applying this definition to the facts as presented in this case, it is evident that the conditions existing at the time of the accident did not constitute an “act of God” An examination of the above definition shows that one of the requisites of an “act of God” is that the circumstances could not have been avoided by the exercise of reasonable prudence, diligence, and care. In the present case the conditions surrounding the hurricane had been in existance for quite some time and their effect could hardly be considered as being unforeseeable. Also to be considered with regard to the “act of God” in concept is the *921 question of whether the “act of God” was the sole cause of the accident. The plaintiff cites the case of Southern Air Transport v. Gulf Airways, 215 La. 366, 40 So.2d 787, which held that winds of seventy miles an hour which blew a parked airplane into other aircraft was not an “act of God” so as to relieve the defendants of liability, when the brakes on the airplane had not been set. Even conceding that the winds from Hurricane Betsy could be considered an “act of God”, the question of concurring negligence on the part of Milton J. King is of certain relevance. In the Rector case the First Circuit Court of Appeal quoted from 38 Am.Jur., Neg. 65, as follows:
“The concurring negligence which when combined with the Act of God produces the injury must be such as is in itself a real, producing cause of the injury, and not merely fanciful or speculative or microscopic negligence which may not have been in the least degree the cause of the injury. In other words, if the Act of God is of such an overwhelming and destructive character as by its own force, and independently of the particular negligence alleged or shown, to produce the injury, there is no liability, although there is some negligence. * * * If the injury was caused by some extraordinary ot unusual natural force or condition that could not have been foreseen, or that would have caused the injury if there had been no negligence, the negligence is not the proximate cause of the injury”
In the present case, it is difficult to conceive of the sixty mile an hour gusts that were reported at the time of the accident as being of such overwhelming and destructive character as to override any negligence on the part of the defendant, Milton J. King. It appears very difficult to imagine how it could be held that these winds were of such extraordinary force that the accident would have occurred re-gardless of whether there was any negligence on the part of the defendant.
The next defense asserted by the defendant-appellee is that of contributory negligence. It is the contention of the defendant-appellee that plaintiff Ella Marie Weatherford King left a place of safety and placed herself in the path of Hurricane Betsy and that, therefore, she assumed the risk of danger and was guilty of contributory negligence. It was brought out at the trial of the case that the plaintiff, Mrs. King, had full knowledge of the existence of Hurricane Betsy having listened to various hurricane warnings on the radio and that, nevertheless, she accompanied Milton J. King upon his trip to Baton Rouge. However, before she may be charged with any contributory negligence, it must be shown that the risk which she allegedly assumed had some cause or relationship to the damages which she sustained. If this is to be true, it must be shown that her injuries resulted from the force of Hurricane Betsy itself. The defendant delves into two possible theories as to how the accident took place. One would be the “gust of wind” theory which suggests that the automobile in which the plaintiff was riding was blown off the highway by a gust of wind from Hurricane Betsy, and the second, that the automobile hit a slippery spot in the highway, went out of control and left the highway. As to the possibility of the gust of wind, the record reveals and indeed the defendant points out in his brief that at the time of the accident the weather conditions other than being extremely rainy, consisted of sustained winds of forty knots or 46 miles per hour and gusts of 58 knots or 66.7 miles per hour. It seems to be highly unlikely and in fact impossible for winds of 66 miles per hour to blow an automobile from the highway. At any rate, the defendant has not borne the burden of proving that this is what happened.
The defendant also contends that the plaintiff was well aware of the heavy rain which had been falling for some *922 time in connection with Hurricane Betsy and, nevertheless, she traveled on the highways which she should have known to be hazardous, and that as a result of this negligent action she was injured. While it is abundantly clear that the plaintiff did have knowledge of the condition that the highways would be in at this time, it must be pointed out that guest passengers have every right to assume that the driver will operate the vehicle in a careful and prudent manner under the conditions which exist at the time. At any rate, the burden is on the defendant to show that there is a causal connection between the conditions which the plaintiff, Ella Marie Weatherford King, knew of or should have known of, at the time of the accident and the accident itself. We have no choice but to find that there is no concrete evidence in the record sufficient to bear this burden.
The next question to be decided is whether there was any substantial breach of the cooperation clause of the insurance policy thereby relieving the defendant of any liability. The plaintiff cites the case of Bernard v. Hungerford, 157 So.2d 246 (Ct. of App. 3rd. Cir., 1963) which stated:
“ * * * In order for an insurance company to deny liability because of a breach of the cooperation clause, the breach must be material and prejudicial.” See also Freyou v. Marquette Casualty Co., La.App., 149 So.2d 697, 703; Baham v. Stilley, La.App., 122 So.2d 884; Broussard v. Broussard, La.App., 84 So.2d 899; Levy v. Indemnity Insurance Co., La.App., 8 So.2d 774.
In the present case, it is evident that the defendant had knowledge of the possibility of Milton J. King changing his testimony as the defendant was advised as early as July, 1966, the facts given to its adjuster were false and that both the plaintiff and Milton King had repudiated them. Nevertheless, when the deposition of Ella Marie Weatherford King was taken on October 11, 1966, and Milton King was tendered for deposition, the defendant refused to take the deposition of Milton King. From this it is evident that the defendant was on notice that Milton King had every intention of changing his testimony and, therefore, could not have been surprised by the testimony given by Milton King, and as a result could not allege that there had been any material or prejudicial breach. Further, even if it could be found that the alleged breach was material and prejudicial, plaintiff cites the case of Futch v. Fidelity and Casualty Company, 246 La. 688, 166 So.2d 274 (Supreme Court July 1, 1964). In the Futch case there was no doubt but that there was a material breach in the cooperation clause by the omnibus insurer. However, since the suit was brought under the direct action statute, R.S. 22:655, it was held that notwithstanding the fact that there had been an active breach of the cooperation clause this would not relieve the defendant insurer of liability to any injured persons. Further cited was the case of Plummer v. Traders & General Insurance Company, 183 So.2d 467 (La.Ct. of App. 3rd Cir.1966), wherein it was held that even where there had been a prejudicial breach by the insured that when the suit was brought under the direct action statute, the insurer’s obligation to the injured person became fixed as of the time of the accident and could not thereafter be prejudiced by the action of the insured, except in the case of fraud or conspiracy. The defendant points to the similarity between the testimony of Milton J. King and the plaintiff, Ella Marie Weatherford King, as being evidence of conspiracy and collusion. This, however, could not be sufficient to show collusion since both Milton King and Mrs. King were testifying to facts which both of them observed. In the absence of any more substantial evidence as to any collusion between Milton J. King and the plaintiff than the inference drawn from the similarity in their testimony, we cannot, in good conscience, absolve the defendant, New York Fire & Marine Underwriters, Inc., of their obligations under the policy of insurance.
*923 This brings 11s to the question of damages. In this regard, we have only the testimony of Dr. Richard M. Moon to testify as an expert witness. Dr. Moon testified that he examined Mrs. King around 12:30 or 1:00 on the morning of September 10, 1965, immediately after the accident. He testified at that time that she had a laceration over the left eye, various bruises and abrasions and that he suspected a fracture of the back. Upon having the plaintiff X-rayed, his suspicions as to the fracture of the spine were confirmed. He prescribed two weeks of complete bed rest, treated her for lockjaw, and prescribed medication to relieve the swelling. He also prescribed diathermy treatments daily and took five sutures in the laceration by her eye. She was hospitalized for approximately two weeks and at the time of her discharge was instructed to wear a back brace for one month and to continue the diathermy treatments. Considering the testimony of Dr. Moon, we consider a judgment of $2,500.00 to be a just compensation for injuries sustained by the plaintiff.
For the above enumerated reasons, we have no choice but to find that the Trial Judge was in error in dismissing the plaintiff’s suit at plaintiff’s demands. We must, therefore, reverse the judgment of the Trial Court and enter a judgment in favor of the plaintiffs in the amount of $2,500.00 plus costs with the costs of appeal to be borne by the defendants, Otis E. King, d/b/a King Cabs, and New York Fire & Marine Underwriters, Inc.
Reversed and rendered.