BARNETTE, Judge.
The plaintiff, William Bourgeois, was awarded judgment in the amount of $8,085 *71 for personal injuries and certain items of special damage against the defendants Great American Insurance Company and Clyde P. Maise, Jr., jointly and in solido, as a result of an automobile accident. The automobile which collided with plaintiff’s automobile causing the injuries was driven by the defendant Maise; it was owned by the defendant Frank Gorney and was insured by Great American Insurance Company. .
Great American brought a third party action for full indemnity against Maise and Gorney based on certain allegations of noncooperation of its insured, Gorney, and the nonpermissive use of the automobile by Maise. Gorney, by reconvention in the third party action, sought recovery of attorney’s fees as a consequence of Great American’s refusal to defend him in the principal action. Great American’s third party petition was dismissed and judgment was rendered in favor of Gorney in the sum of $1,080 on his reconventional demand for attorney’s fee.
Great American appealed and the appeal was answered in this court by plaintiff Bourgeois, seeking an increase of damages and the allowance of an expert medical witness fee which was disallowed by the trial court. Gorney has answered the appeal seeking an increase in the judgment for attorney’s fee.
There was an intervention by Resolute Insurance Company for recovery of $698.-80 representing the amount of damages paid by it as collision insurer of Bourgeois. By stipulation of the parties this amount is admitted and it was agreed that the inter-venor, Resolute, would be entitled to judgment for that sum in the event of Bourgeois’ recovery on the principal action.
An exception of no right of action was filed by Great American against the plaintiff’s petition and an exception of no cause of action was filed by Gorney against the third party petition. These exceptions were properly referred to the merits of the case. It is not necessary to discuss them separately since they have no merit in the absence of a factual finding favorable to Great American.
The facts giving rise to plaintiff’s suit may be stated briefly. Mr. Bourgeois was driving across the Greater New Orleans Mississippi River Bridge toward the City of Gretna on the afternoon of August 27, 1965, when his automobile was suddenly and without warning struck from the rear by an automobile owned by the defendant Frank Gorney, doing business as Acme Home Builders, and driven by the defendant Clyde P. Maise, Jr. The force of the impact was very severe causing extensive damage to both automobiles and physical injuries to Mr. Bourgeois.
There is no real issue of liability and no serious effort was made to exculpate Maise from gross negligence. The defendant Maise filed no answer and offered no defense.
The defendant Great American admits the issuance of a public liability insurance policy to Gorney covering the Buick automobile driven by Maise. It has pleaded an affirmative defense of noncoverage on the allegation that Maise was a nonpermissive user of the automobile at the time of the accident in question. Its position in this respect is based upon the fact that the automobile driven by Maise had been placed by Gorney in possession of Colonial Buick Company for repairs and that Colonial had refused to deliver it to Gorney without his payment in cash for the repairs made. Gorney having not paid, the car was placed on Colonial’s lot and the keys put in a safe place. Thereafter the automobile was removed from its lot without the knowledge or permission of Colonial and while the owner Gorney allegedly was sick in the hospital. The inference is very pointed, though the fact was not proven, that the automobile was stealthily removed by Maise, in whose possession it was at the time of the accident. To bolster the inference against Maise, Great American offered testimony tending to prove that on *72 another occasion under strikingly similar circumstances a Cadillac automobile owned by Maise disappeared from the roof of Pontchartrain Motors, without payment of the repair bill, and later was found in Maise’s possession.
Furthermore, after Great American notified Gorney that he should obtain private counsel for his defense of the suit, Gorney obtained his own counsel, who filed a motion for continuance on behalf of Gorney on October 16, 1967, in which it was alleged :
“Mr. Gorney did not retain counsel until the afternoon of Friday, October 13, 1967, and counsel has been unable because of lack of sufficient time to prepare an adequate defense in this action. However, as of Friday afternoon October 13, 1967 it has become apparent that the 1965 Buick automobile involved in this matter may have been stolen from the parking lot of Colonial Buick, where it had been for repairs.”
The insured, Gorney, made no report of the accident to his insurer, Great American, who learned of the accident for the first time upon receipt of a demand letter from plaintiffs attorney, dated November 17, 1965. At about the same time it received a letter from Resolute Insurance Company relative to the property damage claim paid on behalf of Resolute’s insured, Bourgeois. At this point Great American began its efforts to contact Gorney to obtain a report of the accident and such other information necessary to process the claim made on behalf of Bourgeois.
Without burdening this opinion with the details, it suffices to say that the claims adjuster made reasonable and diligent efforts to contact Gorney by letters, some registered, addressed to his last known business and residence addresses. Some of the letters were returned undelivered, but Gorney did receive at least one letter dated February 24, 1966. In late December, 1965, Gorney was reached by telephone and made an excuse that he was going out of town and would contact the adjuster later. It was not until March 2, 1966 (less than two weeks before suit was filed), that Great American made personal contact with Gorney, at which time Gorney signed a réservation of rights letter and authorized an investigation. At that time he gave a statement indicating that Maise might have had permission to use the automobile at the time in question as a prospective buyer.
Gorney had more than two years from date of the accident and some 21 months from the telephone conversation with the insurance adjuster to determine if Maise had permission to use his automobile on August 27, 1965, and to inquire how and by whose authority the automobile was removed from the repair garage lot. It is significant, therefore, that as late as three days before the date first set for trial he alleged the automobile “ * * * may have been stolen from the parking lot of Colonial Buick * *
Great American had filed an answer to plaintiff’s petition timely on its own behalf and on behalf of Gorney and Maise. On August 26, 1966, it filed a third party petition against Gorney and Maise seeking indemnity in event of a judgment against it on the principal demand, based on the alleged failure of cooperation of Gorney and Maise in the defense of plaintiff’s suit.
After some months of investigation without cooperation from Gorney, Great American concluded on the basis of its information and an alleged telephone statement by Gorney on October 11, 1967, that Maise was not a permissive user of the insured Buick automobile. At this point its course of action changed and it filed a supplemental answer on October 13, 1967, denying omnibus coverage of Maise. It also filed its exception of no right of action against plaintiff’s petition based on noncoverage.
Except for the issue of extent of plaintiff’s injuries the testimony taken on trial below was chiefly on the issue of noncover-age based on Maise’s alleged nonpermissive *73 use of the automobile and Gorney’s failure of cooperation with his insurer in the defense of the suit. There appears to be no denial that Maise’s negligence was the proximate cause of the accident.
The tri^l judge discussed all the issues fully in his' lengthy and well-written reasons for judgment. We quote with approval pertinent portions thereof:
“The next issue to be decided in this case is the exception of no right of action filed on October 13, 1967, by defendant, Great American Insurance Company, on the grounds that Maise, the operator of the Buick sedan, on the day of the accident, did not have the permission of Gorney, the named insured, to operate the vehicle. This exception was referred to the merits by consent of all parties, since it would take evidence to be adduced at the trial to decide this exception.
“In his brief, counsel for defendant, Great American Insurance Company, apparently bases his reason for filing this exception upon a phone call and/or other oral statements made to him by Mr. Gorney several days before the trial to the effect that he, Gorney, had not given permission to Maise to use the car. However, Gorney apparently denied these statements and all of the evidence is to the contrary. Gorney’s original statement to the insurance company, dated March 2, 1966, which is on file in the record, reflects that Maise had permission to use this car as does the testimony of both Gorney and Maise. In fact, there is nothing in the record or the evidence to indicate otherwise. Counsel for Great American tried to reinforce his position in attempting to show that Maise had agreed to buy the vehicle and was paying notes on it. However, the Court fails to see how this altered the situation, as the evidence clearly showed that Maise was simply trying the car out, definitely had Gorney’s permission to use same and there had certainly been no change of title nor had an agreement to purchase been entered into. Counsel for defendent has also tried to implement this thrust with some evidence to the effect that the Buick in question was taken by Maise from Colonial Buick, where it had been repaired, without their knowledge, consent or permission. However, this also fails to alter the situation as the evidence clearly showed that Maise had a general permission from Gorney to use any of his vehicles at any time, and certainly no consent of the garage keeper would be necessary. Accordingly, the exception of no right of action filed herein by Great American will be overruled.
“The next ground raised by Great American as to why they are not liable under their policy to the plaintiff is lack of cooperation of the insured. In this connection, "the defense seems to be two pronged— one defense being the lack of co-operation which would have showed that Maise did not have permissive use from Gorney to use the car and the second defense being a lack of general co-operation. As to the first point, the Court has already determined that all of the evidence showed that Maise did have permissive use from Gorney to use the car, and the Court fails to see where the evidence shows that the insurance company was justified in coming to any other conclusion.
“In regard to the second defense of a lack of general co-operation (and possibly also in regard to the first defense of lack of co-operation, which would have developed an absence of permissive use) the Court feels that the -law is well settled in this state, that under our direct action statute, the insurer’s obligation to the injured person becomes fixed as of the accident and cannot be prejudiced by the action of the insured in the absence of evidence of fraud or conspiracy. Plumber vs. Traders and General Insurance Company, 183 So.2d 467 (La.App. 3 Cir. 1966) (Writs refused, [249 La. 377] 186 So.2d 627) ; Futch vs. Fidelity and Casualty Company, 246 La. 688, 166 So.2d 274; West vs. Monroe Bakery, 217 La. 189, 46 So.2d 122. There was no evidence whatsoever of fraud, collusion or conspiracy in the case *74 at bar, and therefore, the rule enunciated in the above quoted cases certainly applies to this case.
“Counsel for defendant, Great American Insurance, has made a brilliant attempt to justify his position of lack of co-operation by quoting several cases, which he hopes to use as authority for his position. Counsel attempted to liken the case of Freyou vs. Marquette Casualty Company, [La.App.] 149 So.2d 697, to the case at bar, in regard to the co-operation clause. The clause quoted in the policy in the instant case and in the Freyou case are identical. However, in the Freyou case, counsel is quoting a dissenting opinion, and even that dissenting opinion stated ‘ * * * the making of a false statement by the insured to the insurer constitutes a breach of the cooperation clause, where the false statement is material, given in collusion with the claimant, and is prejudicial to the insurer.’ In this case, counsel has failed to show where any false statement was made, or that it was prejudicial to the insurer and certainly, if any such false statement was made, it was not made in collusion with the claimant. Therefore, the Freyou case does not apply.
“Neither does the Court feel that the case of Broussard vs. Broussard, [La.App.] 84 So.2d 899 and Baham vs. Stilley, [La. App.] 122 So.2d 884, quoted by counsel for Great American, apply to this case, because in both of those cases, it appeared that the failure to co-operate was in collusion with the claimants, who were relatives of the insured and in addition, the variations in statements and testimony at the trial was extremely material to the liability of the insurance company, which is not the case here. Counsel has also quoted the case of Garland vs. Audubon Insurance Company, [La.App.] 119 So.2d 530, as being appropriate to the case at bar, and pointed out that in the Garland case any of the inconsistent statements of the insured were promptly revoked and therefore did not prejudice the insurer in its investigation of the case. In the case at bar, the Court feels that any inconsistencies in statements given by Gorney and Maise were corrected long enough before the trial for the insurance company to know what the testimony at the trial would be and, as pointed out before, there is no showing that the testimony at the trial was at variance with previous statements. In addition, both Gorney and Maise had an attorney, each of whom apparently cooperated fully with counsel for Great American before and during the trial.
“The next questions to be resolved in this case are the third-party deniand made by Great American Insurance Company against Gorney and Maise, and the third-party reconventional demand made by Gor-ney against Great American Insurance Company for attorney’s fees for failing to defend him. At this point, it is appropriate to note that Great American originally filed an answer on behalf of both Gorney and Maise. Later, Great American denied coverage to either one, filed a third-party demand against each, and counsel for Great American stated in Open Court that he was representing only Great American. Gorney and Maise each hired separate attorneys who appeared for them in Court in these proceedings. However, neither Gor-ney nor Maise filed any supplemental or additional answers to the main demand, but apparently their attorneys defended them on the answers that had been previously filed by Great American. Gorney then filed a third-party reconventional demand against Great American for attorney’s fees for failing to defend him in this suit, but Maise filed no such reconventional demand.
“There is no allegation whatsoever anywhere by Great American to the effect that the alleged lack of co-operation of Gorney and Maise prejudiced them in their attempt to show that the accident was not the fault of Maise. In fact, Great American made very little attempt to deny liability on this point throughout the trial, apparently since a rear-end collision was involved, the facts of which showed that very little defense could be offered. Great *75 American’s sole complaint against Gorney and Maise is that their lack of co-operation prevented them from showing that Maise did not have permission to use the automobile on the day of the accident. The Court will grant that both Gorney and Maise could have shown a great deal more co-operation, especially Maise. However, as stated before, the Court has failed to see where any of the evidence disclosed, that any earlier notice or more thorough co-operation by either of these gentlemen would have enabled Great American to show that Maise did not have permission to use the automobile, as all of the evidence points to the contrary. The law is also well settled in Louisiana, that in order that there may be a breach of the condition requiring the insured to co-operate with the liability insurer, so as to avoid the latter’s liability under the policy, the lack of co-operation, or the misrepresentation, must he substantial and material to such an extent that it results in prejudice to the insurer in defending the case. Levy vs. Indemnity Insurance Company of North America, [La.App.] 8 So.2d 774; Elba vs. Thomas, et al., [La. App.] 59 So.2d 732; Broussard vs. Broussard, supra, Baham vs. Stilley, supra. Further, it is the burden of the insurer to show that the failure of the insured to cooperate with it was of such gravity as to prejudice it. Levy vs. Indemnity Insurance Company of North America, supra.
“Since the Court does not feel that the lack of co-operation or misrepresentation alleged by the insurer was prejudicial to the insurance company, as the point they hoped to prove could not be proven anyway, and since the insurance company failed to prove that such failure to co-operate was of such gravity as to prejudice it, the Court feels that Great American owed a defense to its insured in this case, and its failure to give such a defense therefore, renders them liable to said insured for all expenses and attorney’s fees incurred by said insured. Smith vs. Insurance Company of State of Pennsylvania, [La.App.] 161 So.2d 903; Kansas vs. Sun Indemnity Company of New York, [La.App.] 37 So.2d 621; Standard Surety & Casualty Company of New York vs. Perrin, [La.App.] 19 So.2d 783.
“This raises an interesting point, namely;, to whom did Great American owe a defense —was it to the named insured, Frank Gorney, or to the omnibus insured, Clyde B. Maise, Jr., who was the driver of the vehicle ?
“This issue was discussed by Judge Cul-pepper in his dissenting opinion in the Fre-you case, supra. It was Judge Culpepper’s opinion that the defense was due to the omnibus insured, or the driver of the car. However, in the case at bar, the Court feels that a defense was owed by the insurer to both Maise and Gorney, because Maise was sued as the driver of the automobile and Gorney was sued as his employer, and it was alleged in the petition, in Article Six, that the accident resulted from the negligence of both Maise and Gorney. The petition also prayed for judgment against both defendants. There was never any attempt made by the defendant insurance company to clarify the petition or to force a choice of defendants. Consequently, it owed a defense to both the named insured and the omnibus insured in this case. As pointed out before, Maise has made no reconven-tional demand for expenses or attorney’s fees, but Gorney has made such a demand for attorney’s fees, which the Court feels he is due.” (Emphasis supplied by trial judge.)
We must concur in the conclusion reached by the trial judge that Gorney’s lack of cooperation did not prejudice his insurer’s defense of the principal action. There appears to have been no defense against the negligence of Maise, and Great American makes no contention that its position in that respect would have been any different if Gorney and Maise had cooperated fullv Great American’s complaint is really directed at Gorney’s failure to cooperate with it in carrying its burden of proof of its affirmative defense of noncoverage due to Maise’s alleged nonpermissive use of the *76 automobile. We can conceive of no cooperation which would have been of benefit to Great American except for Gorney to testify that Maise did not have permission to use the automobile on the day of the accident.
The cooperation clause in the insurance contract under “Conditions” is as follows :
“18. Assistance and Cooperation of the Insured (Coverages A, B, D, E, F, G, H, I and J) The insured shall cooperate with the company and, upon the company’s request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident.”
It was not a failure of cooperation constituting a breach of this condition merely because the factual testimony given by Gor-ney did not support the affirmative defense of his insurer. The policy condition requiring cooperation of the insured is not breached merely by the insured’s denial of the position taken by the insurer if that position is not factually true. “It is not the obligation of an insured to assist the insurance company to defeat its liability.” Elba v. Thomas, supra, at p. 734. The trial judge accepted Gorney’s testimony as credible and there is nothing in the record to justify an opinion by this court to the contrary, though we do concede that in general Gor-ney was very uncooperative and demonstrated a very irresponsible attitude toward this entire matter.
The allowance of $1,080 for attorney’s fee for Gorney was based on the time involved in preparation and defense of the suit on behalf of Gorney, computed at $30 per hour. The reasons given by the trial judge in arriving at this figure do not indicate an abuse of discretion, and the judgment in this respect will not be disturbed. Massey v. Consumer’s Ice Co. of Shreveport, 223 La. 731, 66 So.2d 789 (1953); Herman v. Jambois, 205 So.2d 63 (La.App. 4th Cir. 1967); Wegmann v. Suggs, 147 So.2d 263 (La.App. 4th Cir. 1962).
This brings us to the issue of quantum of damages due the plaintiff. At the time of the accident Bourgeois was 48 years of age and employed as a supervisor of construction in the general contracting business. He was a man accustomed to hard work involving physical strength and skill generally associated with the building trades. Several nonexpert witnesses testified in plaintiff’s behalf that the injuries sustained had so disabled him that he was no longer able to continue the hard work incident to his employment.
The trial court said:
“There is no doubt in the mind of the Court that plaintiff sustained injuries from this accident, and the Court believes that he is still suffering to some extent from some of these injuries to this date. However, the nature, extent, duration of, and just what injuries plaintiff suffered and is suffering from today, and the amount of damages that should be awarded is extremely difficult to determine, due primarily to the apparent great reluctance of Mr. Bourgeois to consult physicians regarding his injuries.”
The injuries sustained and for which the trial court granted plaintiff judgment of $7,500 (not including items of special damage) were generally of the whiplash type, including muscle strain of the cervical thoracic and lumbar regions with contusions. Orthopedic findings were essentially negative. There were some minor abrasions and bruises not uncommon in a traumatic blow of the type sustained.
We will not discuss the medical testimony upon which these findings are based since there appears to be no serious contention *77 of error in this respect. The court’s opinion that at the time of trial plaintiff was still experiencing pain and some disability in the regions involved was amply supported by pertinent testimony.
On the issue of quantum the question of most serious contention is whether certain other painful and disabling conditions, about which there was considerable testimony, both expert and nonexpert, are causally related to the accident. The trial judge held the evidence insufficient on this point to discharge the plaintiff’s burden of proof. The trial judge said:
“One of the great bones of contention in this case, is whether or not the plaintiff sustained, as a result of the accident, a condition known as a fracture or a dislocation of the xiphoid process and a diastasis of the upper rectus abdominis muscles. There is no doubt that the plaintiff now has this condition, as was demonstrated in the Courtroom and was testified to by several doctors. However, the question involved here is whether or not the plaintiff has offered sufficient proof to show that this condition was a result of the accident. The plaintiff’s wife and one of his sons, Wayne Michael Bourgeois, testified that right after the accident Mr. Bourgeois had a red mark in the center of his chest, just above his stomach (right about where the xiphoid process would be) and that in a few days this mark turned into a bruise and became distinctly discolored. The plaintiff, at first, testified that shortly after the accident he had a slight red mark on the center of his chest and that [his] arms were skinned where he had gone through the steering wheel. However, later, on cross-examination, although he stated that he pointed out to Dr. Gordon [1] on one of his first visits the pain in the xiphoid process, he insisted that he never saw his chest shortly after the accident because of a stiff neck (not even while he was shaving) but that about six (6) weeks later, his neck got better and he saw a slight discoloration on his chest, but he insisted again that he could not see his chest in the interim because of his stiff neck and that he never pointed out the discoloration on his chest to Dr. Gordon.
“Dr. Gordon testified that he did not check the xiphoid process or the abdomen of Mr. Bourgeois in his examination of August, September and October, 1965, because Mr. Bourgeois had no complaints relative to this region. In fact, Dr. Gordon’s very words were ‘he did not complain of pain to these regions and I would have expected him to.’ It is also interesting to note in Dr. Gordon’s report of his examinations in 1965, that he did note and report a minor abrasion of both wrists and it would seem logical that he would also have reported a bruise or discoloration of the chest which was one of the areas he examined.
“The testimony, then, regarding this injury is very contradictory. According to plaintiff’s wife and son, it became perfectly obvious within a few days after the accident, but according to Mr. Bourgeois, the deep discoloration either never did develop or did not develop until some six (6) weeks after the accident.
“In addition to this contradictory evidence, which certainly weighs heavily against plaintiff, practically all of the doctors agreed that they would expect a fracture or dislocation of the xiphoid process or a diastasis of the upper rectus abdominis muscles to become painful within a few days after the accident and it would certainly appear that Mr. Bourgeois would have reported this to Dr. Gordon or it would have been discovered *78 by Dr. Gordon on one of the three visits in August, September and October, 196S, shortly after the accident.”
The significance which the trial judge attached to plaintiff’s failure to report, and Dr. Gordon’s failure to discover on examination immediately following the accident, the pain related to the injury to the xiphoid process is not supported by the evidence. While true, according to Dr. Gordon, plaintiff did not report specifically an injury to the xiphoid process, he did report an injury and did complain of pain in the anterior superior thoracic region on his visit to Dr. Gordon the day following the accident. This described region is so close to the location of the xiphoid process and so related to the injuries diagnosed by all the examining doctors that a causal connection with the accident is highly probable.
Dr. Gordon’s report, dated January 11, 1966, and by stipulation admitted into evidence, reads in part:
“Mr. William J. Bourgeois 48 year old white male * * * was seen by me on August 28, 1965 for the first time for injuries he stated were received in a vehicular accident the day before * * *. “Patient complained of pain 1.) ‘all the way around’ the neck, 2.) Pain posterior inferior thorax and adjacent lumbar regions bilateral, 3.) Pain in the superior right anterior half of the thorax and 4.) Abrasions of both wrists.
“Physical examination revealed full and easy neck motion, full right upper extremity motion without obvious discomfort, moderate tenderness of the right anterior superior thoracic region and of the inferior posterior thorax bilateral.
íjs ij; ifc %
“Final diagnoses were:
1.) Muscle strain of neck.
2.) ,Contusion of right anterior superior thoracic region.
3.) Abrasions (minor) of both wrists.
4.) Strain of posterior inferior thorax and adjacent lumbar regions bilaterally.” (Emphasis added.)
Dr. Gordon’s testimony given at the trial of the case below fully coincided with the foregoing written report. His first mention of complaints specifically relating to the “xiphoid process in the sternum” was in connection with his examination of April 5, 1966. The same complaint was made again to Dr. Gordon on September 29, 1967. He said:
“Well, the findings were that he had a prominent xiphoid and he complained of it being quite painful even without palpation, and since we had no, I had no x-ray report on this xiphoid itself asserting whether it was or was not fractured, I didn’t want to run the danger of a possible fracture and an aggravation and that’s why I did not worry about palpating it to any extent.”
Dr. Gordon further testified that in the absence of an intervening trauma he would have to assume that the condition he described as existing at the time of his examination, September 29, 1967, was related to the accident. He said further that the contusion he found in the chest area in his examination in 1965 and the history of having hit the steering wheel would be a possible cause of the injury to the xiphoid process and upper rectus muscle. It was most likely caused in his opinion by a “forward trauma.” At the same time, however, he said: “ * * * but he did not complain of this at that time.” Questioned further on this point he said plaintiff “ * * * had no' complaints related to the xiphoid” on his first three visits to him. He consistently testified about the contusions of the right anterior superior thoracic region, described as being the upper right chest. He located the xiphoid process “ * * * at the very 'end of the sternum where the ribs come in to join the breast bone” or more particularly, at the tip end of the sternum plate right before the opening to the abdomen. An injury to the xiphoid *79 process, he said, would have been such as to produce pain almost immediately.
Dr. Hewitte Thian, who qualified as an expert in the field of surgery, examined plaintiff on November 23, 1966, and testified that he found “a fracture of the xiphoid process as well as a diastasis hernia of the epigastric area.” There seems to be general agreement among all the medical experts that this was a correct diagnosis of the condition known to exist from and after April 5, 1965. The doctors are also in substantial agreement that the diastasis hernia involves the rectus abdominis muscle and that there is some bulging in the epi-gastric region.
We think it is more probable than not that the pain of which plaintiff complained to Dr. Gordon on the day after the accident, described as being in the right anterior superior half of the thoracic region, was related to the condition later diagnosed by all the doctors involving the xiphoid process, rectus abdominus muscle and the area of the sternum. The plaintiff unquestionably was subjected to a traumatic impact by being thrown against the steering wheel. In the absence of evidence of an intervening traumatic blow, it must be concluded that the injuries in the region of the xiphoid process are causally connected with the accident.
It is our opinion that the award of $7,500 for the injuries which the trial judge found to be causally connected was not an abuse of his discretion. Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) ; Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964). In considering the extent of pain and suffering and the impairment of plaintiff’s ability to perform the duties of his employment, it is impossible to separate that associated with one aspect of his injuries from another. We think they are closely interrelated. Therefore we will grant an increase of $1,000 for pain and suffering, thus making the total award for this item of damage $8,500.
Dr. Thian recommended a surgical procedure to correct the injury to the xiphoid process and the diastasis hernia for which he said a surgical fee of $300 would be charged. He estimated the hospital expense at approximately $48 per day for approximately 10 days. Accordingly, plaintiff should have an award of $780 to cover the estimated expense of hospital care and surgery as an additional item of special damage.
Having found that there is a causal connection between the accident and the condition concerning which Dr. Thian testified, the reason given by the trial judge for disallowance of an expert witness fee for Dr. Thian is entirely removed. Furthermore, in any event, Dr. Thian is entitled to an expert witness fee under the authority of Glass v. Aetna Casualty and Surety Company, 166 So.2d 552 (La.App. 4th Cir. 1964).
For the foregoing reasons, the judgment appealed from is amended by increasing the judgment in favor of plaintiff, William Bourgeois, against the defendants Great American Insurance Company and Clyde P. Maise, Jr., jointly and in solido, from $8,085 to $9,865 with interest from judicial demand, and further by the allowance of an expert witness fee for Dr. Hewitte Thian in the amount of $100, which is taxed as cost. In all other respects and as amended herein, the judgment appealed from is affirmed at the cost of appellant Great American Insurance Company.
Amended and affirmed.

. Dr. John Gordon, a general medical practitioner to whom plaintiff went for examination and treatment the day following the accident. Plaintiff was seen by Dr. Gordon again on September 2 and October 1, 1965, and did not return in keeping with other appointments. On April 5, 1966, he returned to Dr. Gordon with complaints of pain in the region of the xiphoid process or upper abdominal area.