HALL, Judge pro tern.
These appeals (Nos. 523 and 524) were taken from the single judgment rendered in two cases which were consolidated for trial below since they involved the same automobile accident.
The first of the consolidated cases was brought by Genevieve Tornabene Chiasson and her husband, Richard J. Chiasson, for damages for personal injuries received by Mrs. Chiasson while a guest passenger in a Ford station wagon belonging to Curtis Cormier and driven by his wife Mrs. Lena M. Cormier. The defendants in this case are Curtis Cormier, owner of the vehicle, his wife Lena M. Cormier, the driver, and Connecticut Fire Insurance Company their public liability insurer, Herbert P. Orgeron, owner and driver of a Plymouth sedan, the other vehicle involved in the accident, and Allstate Insurance Company, Orgeron’s public liability insurer. Prior to trial of the case plaintiffs settled their claim against Mr. and Mrs. Cormier and Connecticut Fire Insurance Company for $4,000.00 and dismissed their suit against these parties, reserving all rights against Herbert P. Orgeron and Allstate Insurance Company.
The second of the consolidated cases is a suit for personal injuries and property damages brought by Herbert P. Orgeron against Mr. and Mrs. Cormier and Connecticut Fire Insurance Company.
The trial court found negligence on the part of the drivers of both vehicles, and ren *728 dered judgment in favor of the guest passenger, Mrs. Genevieve Tornabene Chias-son, against Herbert P. Orgeron and Allstate Insurance Company in solido for $2,500.00 damages for her personal injuries, and in favor of her husband, Richard J. Chiasson against these defendants in the sum of $1,310.65 the stipulated amount of medical and special damages.
In connection with the amount awarded to Mrs. Chiasson the district judge found that she was entitled to an award of $6,500.00 but credited this amount with the $4,000.00 she had received in settlement from Mr. and Mrs. Cormier and Connecticut Fire Insurance Company, their insurer.
Judgment was also rendered below dismissing Herbert P. Orgeron’s suit against Mr. and Mrs. Cormier and Connecticut Fire Insurance Company.
Allstate Insurance Company and Herbert P. Orgeron appealed. Mr. and Mrs. Chias-son answered the appeal praying for an increase in Mrs. Chiasson’s award to $12,-000.00 and further praying that the $4,000.00 credit be disallowed.
The accident out of which these suits arose occurred in the intersection of Magazine and Melpomene Streets in the City of New Orleans at approximately 12:30 A.M. on March 15, 1959. Two vehicles were involved : a Ford station wagon driven by Mrs. Lena M. Cormier and a Plymouth automobile owned and driven by Herbert P. Orgeron. Mrs. Genevieve Tornabene Chiasson was a guest passenger in the Cormier station wagon and occupied the right front seat. Herbert P. Orgeron was the sole occupant of his car.
The Cormier vehicle was being driven on Melpomene Street in a direction away from the river and towards the lake. The Orgeron car was proceeding uptown on Magazine Street in the direction of Audubon Park.
Melpomene Street is an undivided one-way street running in the direction of the lake. The speed limit thereon is 20 miles per hour. Magazine Street in this vicinity is an undivided one-way street running in an uptown direction. It is a right of way thoroughfare with a 30 mile per hour speed limit. Traffic entering Magazine Street from Melpomene Street is controlled by a stop sign located on a post on the downtown river corner of the intersection.
The downtown river corner of the intersection is occupied by a store which is built up to the property line of Magazine Street. The testimony shows that at the time of the accident two automobiles were parked on Magazine Street in front of the store in close proximity to the corner and to each other. A third car was parked about a car’s length behind them. The store, and more especially the parked cars, made this a blind corner.
It had been raining during the day prior to the accident and at the time of the accident it was misting or drizzling.
There were only three witnesses to the accident — Mrs. Cormier, her passenger Mrs. Chiasson and Orgeron.
The testimony of Mrs. Cormier is to the effect that she had been driving on Melpomene Street at about 15 miles per hour, that she came to a full stop at the stop sign, but being unable to see from there on account of the parked cars, she crept out past the front of the parked cars and looked down Magazine Street. Seeing no cars approaching and not seeing the reflection of any car lights she proceeded at slow speed to cross the intersection.
Mrs. Chiasson’s testimony is to the effect that she was sitting on the right of Mrs. Cormier, that they stopped at the stop sign and then crept out past the parked cars in order to see traffic coming from downtown on Magazine Street. Mrs. Chiasson testified that she then could see about half a block down Magazine but the right window of the station wagon was up and was wet and foggy. She testified that she looked to the right but saw no approaching traffic, then turned her head to the front as Mrs. *729 Cormier proceeded out into the intersection at a slow speed, which both ladies estimated to be about 5 miles per hour. Mrs. Chiasson further testified that just as the hood of the station wagon cleared the middle of Magazine Street she glanced again to the right and at this moment saw the Orgeron car about four car lengths or about 40 feet away. She estimated Orgeron’s speed at about 40 miles per hour. She cried out '‘stop” and the crash occurred.
All witnesses agree that the front of the Orgeron car struck the station wagon approximately in the middle of the right side, and that the point of impact was in the center of Magazine Street. The station wagon was partially turned around and came to rest facing in a downtown direction after its left side struck a telephone post located on the uptown lake corner of the intersection. Striking the telephone pole caused both ladies to be thrown out of the left door of the vehicle to the street or sidewalk. The Orgeron automobile moved only one or two feet and came to rest approximately at '.he point of impact.
Orgeron testified that he was travelling uptown in the center of Magazine Street at 25 to 30 miles per hour; that he was familiar with the neighborhood and knew there was a stop sign controlling traffic on Melpomene Street; that he was about forty feet from the corner when he first saw the Cormier vehicle; that his front bumper was then about opposite the rear of the second parked car; that when he first saw the Cormier station wagon it had not then entered Magazine Street but was about six feet from the corner going about 20 miles per hour; that he put on his brakes immediately but could not avoid the accident; that his brakes held but he did not think he skidded. Orgeron testified that the Cormier vehicle did not stop for the stop sign but proceeded out in Magazine Street in front of him at 20 miles per hour.
Regardless of whether Mrs. Cormier stopped at the stop sign and then crept out past the parked cars or whether she did not stop but drove into the intersection at 20 miles per hour, she was obviously negligent in proceeding out into the path of an oncoming automobile which was on a right of way street. The Orgeron car was there, its headlights were burning and she is deemed to have seen what she should have seen.
The principal question involved in these appeals is whether Orgeron was guilty of any negligence which proximately contributed to the accident.
The district judge held that he was negligent in that he was going at least 40 miles per hour and in that according to his own testimony he had had two whiskey and soda highballs while he was in a barroom with some friends for two and one-half hours prior to the accident.
There is no testimony in the record as to Orgeron’s speed except his testimony that he was travelling between 25 and 30 miles per hour, and the testimony of Mrs. Chias-son that when she saw him he was going 40 miles per hour. The district judge based his findings as to Orgeron’s speed on the amount of damage inflicted, and on the testimony of Mrs. Chiasson.
We do not believe that Orgeron’s speed can be determined from the amount of damage done. See Liddell v. New Orleans Public Service Inc., La.App., 128 So.2d 80, at pp. 87 and 88. Moreover, we cannot rely too much on Mrs. Chiasson’s testimony since she saw Orgeron’s car just a split second and then through a foggy window. Moreover it is difficult even under the best of conditions to judge the speed of an approaching car. In addition to this we find this remark of the trial judge made during the course of Mrs. Chiasson’s testimony * * The lady obviously has very little idea of measurement of distance, in the court’s opinion, or the passage of time Ht H: h=
The fact that Orgeron had had two highballs, the last one about an hour before the accident is unimportant in view of the fact that there is no testimony whatever that his *730 mental or physical processes were in any manner affected thereby.
Our conclusion is that there was insufficient proof that Orgeron was exceeding the speed limit.
Moreover if the station wagon was travel-ling at approximately five miles per hour as the trial judge found and if in fact the accident occurred while Orgeron was going 40 miles per hour it still would have occurred had he been going only 30 miles per hour. It follows that his speed was not a proximate cause of the accident. See Lid-dell v. New Orleans Public Service Inc. supra and cases cited therein.
The trial judge also found that the corner was a blind corner and that Mrs. Cormier after stopping crept out past the parked cars in order to see. Obviously, if Mrs. Cormier could not see until she cleared the parked cars, neither could Orgeron have seen her. If Orgeron was only 40 feet away at the time he first saw her, as he testified, he could not have stopped his car in time to avoid the accident.
We might indulge in all sorts of mathematical calculations in an endeavor to determine whether Orgeron could have stopped in time to avoid the accident after he saw or should have seen the station wagon, and all of the calculations would ultimately be based on the estimates of speed and distances testified to by Mrs. Chiasson and Orgeron. In our opinion the proof is insufficient to show that Orgeron could have avoided the accident.
The law of the case is expressed as follows in Emmco Ins. Co. v. Ferrara, La.App., 127 So.2d 48, 50:
“The jurisprudence clearly outlines the rights and duties of a motorist approaching and crossing an intersection when he is on a favored thoroughfare. If he sees a vehicle approaching on a less favored street, regulated by a stop sign, he may assume that the less favored vehicle will respect his right of way, unless he is or should have been apprised by some circumstance that the other motorist will not in fact respect his superior right of way. And then his failure to yield the right of way will constitute negligence only if he was or should have been aware of the impending danger in sufficient time to avert the collision.”
See also Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849; Kientz v. Charles Dennery Inc., 209 La. 144, 24 So.2d 292.
In conclusion we are of the opinion that the accident was caused by Mrs. Cormier’s negligence and that no negligence on the part of Orgeron was proved.
For these reasons those parts of the judgment appealed from in favor of Richard J. Chiasson and in favor of his wife, Genevieve Tornabene Chiasson against Herbert P. Orgeron and Allstate Insurance Company are .reversed, and that part of the judgment appealed from which dismissed the suit of Herbert P. Orgeron against Curtis and Lena M. Cormier and Connecticut Fire Insurance Company is likewise reversed.
Herbert P. Orgeron sued for damages for personal injuries and for damages to his car.
The car was damaged beyond economic repair. It had a value of $110.00 and the salvage amounted to $60.00. Mr. Orgeron’s injuries consisted of lacerations of his lip and upper maxilla. His gums were sore for about a week and a half. He had a cut on his arm which bothered him for a few days. Besides this he had bruises on his face which stayed for about two and one half weeks. Ilis dental bridge was broken in the accident and his dental treatment and replacement of the bridge came to $125.00. In our opinion a judgment in the sum of $475.00 would be adequate.
For the foregoing reasons the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that there be *731 judgment in No. 523 in favor of Herbert P. Orgeron and Allstate Insurance Company dismissing the demands of Richard J. Chias-son and also the demands of Genevieve Tornabene Chiasson against them and each ■of them, all costs to be paid by Richard J. and Genevieve Tornabene Chiasson.
It is further ordered, adjudged and de•creed that there be judgment in No. 524 in favor of Herbert P. Orgeron and against ■Curtis Cormier, Lena M. Cormier and Connecticut Fire Insurance Company in solido in the full sum of $475.00 together with legal interest thereon from date of judicial demand until paid all costs in both courts to be borne by the said defendants.
Reversed and rendered.