183 So.2d 467 (1966)
Manuel L. PLUMMER, Plaintiff-Appellant-Appellee,
v.
TRADERS & GENERAL INSURANCE COMPANY et al., Defendants-Appellees-Appellants.
No. 1646.
Court of Appeal of Louisiana, Third Circuit.
February 15, 1966.
Rehearing Denied March 9, 1966.
*468 Gist, Gist, Methvin & Trimble, by DeWitt T. Methvin, Jr., Alexandria, for defendant-appellant-appellee.
Wood & Jackson, by W. R. Jackson, Jr., Leesville, for plaintiff-appellee-appellant.
Gold, Hall & Skye, by Leo Gold, Alexandria, for defendant-appellee-appellant.
Stafford & Pitts, by John L. Pitts, Alexandria, for defendants-appellees.
Before SAVOY, HOOD and CULPEPPER, JJ.
SAVOY, Judge.
In this case plaintiff, Manuel L. Plummer, brought suit in tort against three individual defendants and their respective liability insurers.
*469 Plaintiff's petition alleges that he was riding as a guest passenger in an automobile going south on Highway 171 about 6:30 A.M. on July 7, 1962, within the corporate limits of Leesville, Louisiana. A second car was proceeding east on Cavanaugh Street and failed to stop at the stop sign located at the intersection of Cavanaugh Street and Highway 171. A collision occurred between those two cars, whereupon the car in which plaintiff was a passenger then collided with a third car, which was going north on Highway 171, bounced off it and finally came to a stop upon colliding with a concrete pillar off the east side of the highway. Plaintiff alleged concurrent negligence on the part of all three drivers, couched principally in terms of his driver's excessive speed and lack of control, the second driver's failure to observe the stop sign, and the third driver's excessive speed and lack of proper control.
By way of identifying the various parties, we will point out that plaintiff's driver was Joe Wayne Beason, who was using that automobile with the permission of William E. Harrison, Jr., its owner, which automobile was insured by Maryland Casualty Company. The automobile going east on Cavanaugh Street was owned and being driven by Mrs. Bell McRae Bond, a femme sole; her liability insurer is Traders & General Insurance Company. The automobile going north on Highway 171 was owned by R. B. Carter and was being driven with his permission by his son, R. B. Carter, Jr.; Royal Indemnity Company is the liability insurance carrier. For purposes of simplification, we will, at times, refer to the parties defendant as Beason-Maryland, Bond-Traders and Carter-Royal.
Bond-Traders answered plaintiff's petition, generally denying its material allegations and pleading plaintiff's contributory negligence and joint venture, with imputation of Beason's negligence to plaintiff.
Carter-Royal answered, generally denying plaintiff's material allegations.
With regard to Beason-Maryland, Mr. Beason filed no defensive pleadings and made no appearance, with plaintiff proceeding against him as on confirmation of default. Maryland answered plaintiff's petition, denying its material allegations, and pleading plaintiff's contributory negligence and taking the further position that Beason failed to cooperate with it or to furnish information necessary to the defense of the suit, in violation of policy provisions to that effect, thus relieving Maryland of any liability which might arise.
Upon trial on the merits, the lower court dismissed plaintiff's suit as to Carter-Royal and gave judgment for plaintiff against the four defendants, Bond-Traders and Beason-Maryland, jointly and in solido.
From that judgment, plaintiff and all of the parties cast in judgment, except Beason, have appealed. Plaintiff seeks an increase in the quantum of damages; the appealing defendants seek a reversal regarding their liability to plaintiff.
The issues to be decided on these appeals are: the question of negligence as such, the special defenses raised by the various defendants, and plaintiff's claim that the award should be increased.
First, with regard to Carter-Royal, it is apparent from the evidence, and as held by the lower court, that there was no negligence on the part of R. B. Carter, Jr. None of the appealing parties now argue that there was, and, consequently, we need give no further attention to that facet of the case.
On the question of negligence as such, plaintiff, of course, contends that both Beason and Bond were guilty of negligence proximately causing his injury. Maryland contends that Beason was on the favored street and could not have avoided the accident, considering Mrs. Bond's entry into the intersection in front of him. Bond-Traders contend that Mrs. Bond did stop for the stop sign and could have negotiated *470 the crossing safely, except for Beason's speed and lack of control.
As regards Mrs. Bond, she testified that she stopped at the stop sign, looked both ways and saw Beason approaching from the north at a distance of about two blocks, and Carter approaching from the south at about the same distance; that, as she started into the intersection, she was blinded by the sun and did not again see the Beason car until it was in front of her. The record otherwise reveals that she proceeded into the intersection at a speed of no more than about five miles per hour and had traveled a distance of about sixteen feet when the collision occurred, the front of her car then being about at the center line of Highway 171. R. B. Carter, Jr. and his passenger, Alexander E. Wayman, both testified that when they first saw Beason he had not entered the intersection, but was near it, and that they were in Carter's car, going north and were some ninety to one hundred fifty feet south of the intersection. We conclude, as did the lower court, that Mrs. Bond did not properly appraise the traffic situation, that Beason was not some two blocks away when she first observed him, and that she was, therefore, negligent in entering the intersection under the circumstances. A motorist's duty, in negotiating an intersection at a stop sign, is not only to stop, but also to clearly ascertain that further progress may be made in safety. Hebert v. Travelers Insurance Company, (La.App., 3 Cir., 1965), 179 So.2d 513, and cases therein cited.
As regards Beason, we must concede that, academically, the evidence leaves some room for argument. Beason was not present at the trial. None of the testifying witnesses could accurately fix Beason's speed as he approached the intersection. The investigating police officer, Alton V. Norris, testified that, when he questioned Beason following the accident, Beason stated to him that he had been going about thirty miles per hour. Plaintiff, Beason's passenger, testified that, as they were reaching the crest of a small hill prior to the accident, he noticed the speedometer reading between thirty-five and forty miles per hour, and that as they descended the down-grade, approaching the intersection, Beason may have picked up additional speed. It is to be noted that Mrs. Bond was the first to enter the intersection. The collision between Beason and Bond occurred approximately at the center line of the highway in the southeast quarter of the intersection. The front of the Bond car struck, or was sideswiped by, the right side (mostly to the rear) of the Beason car, after which Beason careened off and then sideswiped the right side of the Carter car in the west lane of the highway, careened off it and then ultimately struck the concrete pillar off the east side of the highway some ninety feet or so south of the intersection. The concrete pillar, by measurement, was three feet, four inches by five feet, eight inches; it extended above the ground some twenty-one inches, and it was embedded in the ground a distance that could not be readily measured, but was nevertheless well embedded. The force of Beason's impact against it was such that the pillar, which was obviously quite heavy, was moved two to three inches or more, as evidenced by the crevice left between the pillar and the ground following the collision. An eye witness to that collision, E. W. Holsomback, testified that the impact against the pillar was such that "I thought he was going to turn a flip", and that the back wheels of the Beason car left the ground "at least a foot". The trial judge concluded that Beason was speeding, and that his speed was a contributory cause of the accident. We feel there is sufficient evidence to support that finding, and are unable to say that the trial judge was manifestly erroneous in reaching that conclusion.
In its brief, Maryland Casualty Company has cited the cases of Liddell v. New Orleans Public Service, Inc., (La.App., 4 Cir., 1961), 128 So.2d 80; and Chiasson *471 v. Connecticut Fire Insurance Company, (La.App., 4 Cir., 1962), 144 So.2d 726, to the effect that the speed of a vehicle cannot be determined from the amount of physical damage done. In many instances that would be quite true, but we note that in both of the cited cases the collisions were between two moving vehicles, rather than with a stationary object. In neither case did the court attempt to lay down a hard and fast rule to the effect that speed and physical damage can never be reconciled. See particularly the pertinent portions of the dissenting opinion in the first of the two cited cases.
We turn next to the special defenses raised, two of which are plaintiff's contributory negligence in failing to protest or warn Beason of his speed and joint venture, with imputation of Beason's negligence to plaintiff. The trial judge, in his written opinion, took the following view:
"* * * As to the charge of contributory negligence made against plaintiff, the defendants have the burden of proof. No evidence was introduced by them to support their plea that plaintiff and Beason were on a joint venture. The evidence shows that Beason invited plaintiff to ride in his car the morning of the accident, and that plaintiff usually rode to work with other parties. Plaintiff testified that it did not appear to him that Beason was driving his car in a reckless manner before the accident, and that it did not appear to him that it was unsafe to ride in Beason's vehicle. He stated that he was sitting in the front seat with his back somewhat to the right looking toward Beason. For that reason he did not see the Bond car and thus he was unaware of any danger ahead. There was, therefore, no reason for him to protest. It does not appear to the court from the evidence that plaintiff had reason to remonstrate with, or warn, Beason in connection with his operation of the vehicle, at least until after the occurrence of the collision. * * * It is the court's conclusion that there was no contributory negligence on the part of plaintiff, the guest passenger in the Beason car." In that view we concur.
Maryland Casualty Company also raised the defense that it is relieved of responsibility under its policy on the Beason car because of Beason's (the omnibus insured's) failure to cooperate with it in the investigation and defense of plaintiff's claim. From the testimony of R. J. Bright and C. S. Smith, Maryland's representatives, it does not appear that Maryland was materially hindered in its investigation and defense by Beason's lack of cooperation. In any event, under our direct action statute, the insurer's obligation to the injured person becomes fixed as of the occasion of the accident and cannot be prejudiced by the action of the insured in the absence of evidence of fraud or conspiracy. Futch v. Fidelity & Casualty Company, 246 La. 688, 166 So.2d 274. No such fraud or conspiracy is shown in the instant case.
Finally, we turn to the extent of plaintiff's injuries and the quantum of damages. The lower court awarded a total of $8,530.55, that is, $6,000.00 to plaintiff personally, and $2,530.55 as special damages. In its written opinion the lower court stated:
"Plaintiff was taken to a hospital in Leesville immediately after the accident. He was given first aid by Dr. Biggs and then almost immediately transferred by ambulance to the Baptist Hospital in Alexandria. There he was seen by Dr. M. E. Gutierrez and Dr. C. J. Brown, an oral surgeon. Both doctors testified by deposition.
"Dr. Gutierrez and Dr. Brown stated in their depositions that: Plaintiff had suffered lacerations of his face, a fracture of the nasal septum, tears of the cartilages in the nose, a fractured cheekbone, broken upper and lower jaws, including fracture of the maxilla; fracture of the palate, fracture of the infraorbital rim and a separation and fracture of the zygomatic arch; four upper *472 front teeth were knocked loose and deadened and would have to be removed; extensive surgery was required and plaintiff was hospitalized for eleven days. Good results were obtained; Dr. Gutierrez last saw plaintiff on July 24, 1962, and he felt that he had recovered from the injuries as far as the portion treated by him, with the exception of some numbness of the lip and some lack of motion on the left side, which produced no speech difficulty, the possibility of some deformity on the nose, and the scars on his face; when he examined plaintiff initially he made a neurological as well as a physical examination and he found no evidence of head injury, nor any injuries to the extremities, back, abdomen, chest or other portions of his body, all injuries being confined to the facial region. Dr. Gutierrez stated that the residuals from the injury should not interfere with plaintiff doing physical labor and he felt that plaintiff could perform the work of a painter.
"Following the surgery on July 8, 1962, and his discharge from the hospital on July 17, 1962, Dr. Brown saw plaintiff on July 24, and August 3, August 10, and August 21, 1962; at which time he found normal healing had occurred. He found no restricted breathing and no involvement of the frontal sinuses that could be connected with the accident. The only residual or permanent injury that Dr. Brown could relate to the accident was the fact that plaintiff would have to suffer the loss of four front teeth. Dr. Brown stated that when he last saw plaintiff on August 21, 1962, there was no reason why he could not perform physical labor or go about his normal activities as a painter. Dr. Brown also stated that the numbness of the lip and the lack of movement would pass away.
"Plaintiff was examined by Dr. C. W. Lowery on September 4, 1962. He was complaining of general soreness and of his left knee. He made no complaint of an injury to his back. Dr. Lowery stated that he found no muscle spasm and no evidence of orthopedic disability. Because of his subjective complaints of soreness, Dr. Lowery gave plaintiff the benefit of doubt and concluded that plaintiff had a fully recovered minimal lumbo sacral strain and a possible slight contusion of the knee. Dr. Lowery saw no reason why plaintiff could not resume his duties as a painter.
"Dr. William R. Cheek examined plaintiff on August 20, 1962. He reported evidence of a mild cervical sprain from which he seems to be recovering satisfactorily. He also noted decrease of sensation in the left upper lip.
"Dr. T. G. Blocker felt that plastic surgery would improve the scars on plaintiff's face and he recommended such operative procedure. He fixed the surgical fee of $250.00. Three days in the hospital would be necessary.
"There can be no doubt from the medical testimony that plaintiff received very painful injuries in the accident and it is to the credit of the medical profession that he has so little residual disability. * * *"
After reviewing all of the medical evidence, we are of the opinion that in view of the serious injuries sustained by the plaintiff in the instant case, the award of $6,000.00 to said party for general damages is inadequate, and we are hereby increasing said award to the sum of $12,000.00.
The trial judge allowed plaintiff the sum of $2,530.55 as special damages, which are itemized as follows:

 Medical expenses incurred-------- $1,080.55
 Allowance for dental plate
 after removal of four teeth---- 200.00
 Allowance for plastic surgery
 and hospitalization------------ 350.00
 Loss of wages-------------------- 900.00
 _________
 Total--------------- $2,530.55

These damages have been proven to our satisfaction, and we hereby affirm this portion of the judgment.
*473 For the reasons assigned, the judgment of the district court is amended by increasing the award made to plaintiff from the sum of $8,530.55 to the sum of $14,530.55, and as amended, is affirmed. Costs of this appeal are taxable against the parties cast in judgment by the lower court.
Amended and affirmed.

On Applications for Rehearing.
En Banc. Rehearing denied.