213 So.2d 176 (1968)
Gladney McCAULEY, Plaintiff-Appellant,
v.
Elius LaFLEUR, Defendant-Appellee.
No. 2386.
Court of Appeal of Louisiana, Third Circuit.
July 29, 1968.
Rehearing Denied August 20, 1968.
*177 Earl B. Taylor and Frank P. Trosclair, Jr., Opelousas, for plaintiff-appellant.
Donald Soileau, Mamou, for defendantappellee.
Before TATE, HOOD and CULPEPPER, JJ.
HOOD, Judge.
This is a tort action instituted by Gladney McCauley against Elius LaFleur. Plaintiff claims damages for personal injuries allegedly sustained by him when an automobile which he was driving collided with a car owned by defendant LaFleur and being driven by the latter's wife. Judgment on the merits was rendered by the trial court rejecting plaintiff's demands, and plaintiff has appealed.
The suit was before us previously on appeal from a judgment of the trial court dismissing the suit on an exception of no right and no cause of action. The issue presented there was whether Mrs. LaFleur was on a community mission when the accident occurred. We held that she was, and accordingly we reversed the judgment appealed from and remanded the case. See McCauley v. LaFleur, 205 So.2d 458 (La.App.3d Cir. 1967). It is before us at this time on appeal from a judgment rendered on the merits.
The accident occurred at about 8:15 a. m. on December 4, 1965, at the intersections of Hackberry and Ninth Streets in the Town of Mamou. Both of these streets are blacktopped, two lane streets, each being about 28 to 30 feet wide. Ninth Street runs north and south, and it *178 is the right-of-way or preferred street at that intersection. Hackberry Street, which runs east and west, is the inferior thoroughfare. A stop sign is located near the intersection warning motorists on Hackberry to stop before proceeding to cross Ninth Street. A building with shrubbery around it is located southeast of and adjacent to the intersection, very near the streets, the building being so situated that two motorists, one approaching the intersection from the east and the other approaching it from the south, are unable to see each other until they reach points very near the crossing.
The legal speed limit on these streets is 30 miles per hour. The weather was clear and it was daylight when the accident occurred.
Immediately prior to the time the cars collided, plaintiff was driving north on Ninth Street, and Mrs. LaFleur was driving her husband's car west on Hackberry Street. Shortly after Mrs. LaFleur entered the intersection of these two streets, the left front wheel and fender of her car was struck by the right front part of plaintiff's automobile. The point of impact was in the northeast quadrant of the intersection, which indicates that the front of plaintiff's car had completely traversed the south lane of traffic of Hackberry Street, while the front of Mrs. LaFleur's car had not reached the center line of Ninth Street.
The account of the accident given by McCauley differs from that given by Mrs. LaFleur. The trial judge rejected the testimony of plaintiff, however, nothing in his reasons for judgment that he had observed the demeanor of each witness and that he "knows the character of the plaintiff for his credibility and incredibility." The trial judge also observed, and the evidence shows, that plaintiff had attempted to bribe a witness to change his testimony in favor of plaintiff.
The trial judge is in a better position than we are to judge the credibility of witnesses who testify before him. For that reason we give great weight to his conclusions as to the facts and as to the credibility which he assigns to the testimony of a particular witness. We have held consistently that the determinations of fact made by the trial judge will not be disturbed unless found to be clearly erroneous. Gulf Machine Shop v. Poynter, 192 So.2d 606 (La.App.3d Cir. 1966).
Our review of the record convinces us that the trial judge was justified in rejecting the testimony of the plaintiff in this case. We attach little or no weight to his statements and instead, like the trial judge, we accept Mrs. LaFleur's version of the facts.
According to Mrs. LaFleur's testimony she stopped when she reached the intersection, and while so stopped she saw plaintiff's car approaching from her left. She stated that in her opinion plaintiff's automobile was about 150 feet from her when she first observed it, but when asked to point to some object which was as far from her as was plaintiff's car at that moment, she indicated that plaintiff was a distance of only about 75 feet from her when she first saw him. After observing plaintiff's car approaching at that distance, Mrs. LaFleur looked to her right and determined that no vehicles were approaching from that direction. She then proceeded to enter the intersection, and after she had travelled a distance of only three to five feet into the crossing she again observed plaintiff's car approaching her, but at that moment the automobile was so close that it was obvious to her that a collision would occur. She stated that she immediately turned her wheels and applied her brakes, but was unsuccessful in her attempt to avoid an accident.
Mrs. LaFleur was unable to estimate the speed at which plaintiff was travelling when she first observed his car approaching the intersection, but she thought he was travelling at a speed of between 30 and 40 miles per hour when he struck her.
*179 A passenger who was riding in the car with plaintiff testified that he was driving "around 30 or 35 miles per hour" as he approached the intersection, but that he could have been going as fast as 40 or 42 miles per hour. Another passenger in the car estimated his speed in approaching the crossing to be 30 to 35 miles per hour. We conclude that plaintiff was travelling between 30 and 40 miles per hour as he approached the intersection and when the collision occurred.
A motorist who is confronted with a stop sign at an intersection is required to bring his vehicle to a complete stop before entering the crossing, to appraise traffic in the intersecting street and to make certain that the way is clear for him to make a safe passage across the intersection before he enters it. When the motorist stops his vehicle before proceeding to cross a right of way street, he has performed only half of the duty which the law imposes upon him. To stop and then proceed in the immediate path of oncoming vehicles constitutes negligence. Herbert v. Travelers Insurance Company, 179 So.2d 513 (La.App.3d Cir. 1965); Plummer v. Traders & General Insurance Company, 183 So.2d 467 (La.App.3d Cir. 1966); Hernandez v. State Farm Mutual Automobile Insurance Company, 128 So.2d 833 (La.App.3d Cir. 1961).
We conclude in the instant suit that Mrs. LaFleur was negligent in failing to yield the right of way to plaintiff's automobile at this intersection, and in proceeding to cross the preferred street directly in front of approaching traffic and at a time when it was unsafe for her to do so. We think her negligence in that respect was a proximate cause of the accident.
Defendant contends, however, that plaintiff also was negligent, and that his negligence was a proximate and contributing cause of the accident barring him from recovery. His plea of contributory negligence is based largely on the contention that plaintiff failed to maintain a proper lookout and that he was driving his automobile at an excessive rate of speed.
The party pleading contributory negligence, of course, bears the burden of establishing facts which will support that affirmative defense. McDaniel v. Louisiana & Arkansas Railway Company, 194 So.2d 119 (La.App.2d Cir. 1967).
Applicable here, we think, is the established rule of law that a motorist who is travelling on a right of way street, with knowledge of the location of a stop sign directing traffic on an inferior intersecting street to stop, has the right to assume that the driver approaching the intersection from the less favored street will observe the law, and that he will stop and will yield the right of way to traffic on the preferred thoroughfare. And, he can indulge in that assumption until he sees or should see that the other car has not observed or is not going to observe the law. Koob v. Cooperative Cab Company, 213 La. 903, 35 So.2d 849 (1948); Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (1964); Guidry v. Grain Dealers Mutual Insurance Company, 193 So.2d 873 (La. App.3d Cir. 1967).
The plaintiff in this case was thoroughly familiar with this intersection. He lived about two blocks from it, and he had worked as a taxi driver in that community. He knew, therefore, that Ninth Street was the preferred thoroughfare, and that stop signs were located at the intersection directing motorists on Hackberry Street to stop before entering the crossing.
According to Mrs. LaFleur's testimony, while she was stopped at the intersection she looked to her left and saw plaintiff's car approaching. She pointed out that plaintiff was about 75 feet from her at that time. She then turned to her right, and after observing that no traffic was approaching from that direction, she proceeded to enter the crossing. She stated that it required about "two seconds" for her to observe traffic on her left, but she did not *180 indicate how long it took for her to observe traffic on her right. We assume that it required only a moment for her to do so, but even so we must conclude that plaintiff's car had reached a point which was less than 75 feet from her when she started her car into the crossing. The front of her automobile had travelled a distance of only three to five feet when she next observed plaintiff's car, and then she noted that a collision was imminent. Her testimony is, "And then I went about, around five feet, three to five feet, I'll say, and there he was." The cars collided before the front of Mrs. LaFleur's car reached the center line of Ninth Street.
We think McCauley had the right to assume that Mrs. LaFleur would yield the right of way to him at this intersection and that she would not proceed to cross Ninth Street, the preferred thoroughfare, directly in front of him, at a time when it should have been obvious to her that she could not safely negotiate the crossing. In our opinion he was not negligent in failing to anticipate that she would cause her car to enter the intersection when he was so close to it.
Defendant points out, however, that plaintiff was driving at a speed which was in excess of the legal speed limit. He argues that the violation of a speed statute constitutes negligence per se, and that plaintiff thus is barred from recovery by his own contributory negligence. He cites Dixie Drive It Yourself System New Orleans Company v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962), and other cases, as authority for that argument.
In the Dixie Drive It Yourself case, supra, the negligence of the driver consisted of stopping his truck in one of the main lanes of traffic on the Airline Highway near New Orleans during a heavy rain, and permitting the truck to remain in that position for a period of from eight to ten minutes without displaying red signal flags, as required by LSA-R.S. 32:442. (This section of the Revised Statutes was repealed by Act 310 of 1962, but substantially the same provisions are now included in LSA-R.S. 32:369.) Our Supreme Court stated that this section of the Revised Statutes was a safety measure, that the violation of such a statute constitutes negligence per se, but that it does not constitute actionable negligence unless it was a "legal cause" or a "cause-in-fact" of the collision, or unless the negligent act was a "substantial factor" in bringing about the accident. The court found, as a fact, "that the collision would not have occurred if the statutory precautions to protect approaching traffic had been taken," and thus it concluded that the negligence of the driver in failing to put out the red flags "was a substantial factor in bringing about the collision, or a cause-in-fact," and thus that his actions constituted actionable negligence. In so holding, the court said:
"The statute was designed to protect life and property on the highways. It is a safety measure. The violation of its provisions is negligence per se, and this negligence is actionable if it was a legal cause of the collision." (emphasis added)
"Negligent conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm. Under the circumstances of this case, the negligent conduct is undoubtedly a substantial factor in bringing about the collision if the collision would not have occurred without it. A cause-in-fact is a necessary antecedent. If the collision would have occurred irrespective of the negligence of the driver of the R C Cola truck, then his negligence was not a substantial factor or cause-in-fact." (emphasis added)
"We can reasonably infer that the collision would not have occurred if the statutory precautions to protect approaching traffic had been taken."
"We conclude that the negligence of the obstructing driver was a substantial factor *181 in bringing about the collision, or a cause-in-fact." (emphasis added)
In the instant suit we have concluded that plaintiff was driving between 30 and 40 miles per hour when the accident occurred, and he thus was slightly exceeding the legal speed limit of 30 miles per hour at that time. We think the speed limit ordinance was a safety measure. Under the holding in the Dixie Drive It Yourself case, therefore, his action in violating that ordinance constituted negligence per se, but it did not constitute actionable negligence unless his excessive speed was a legal cause or a cause-in-fact of the accident, or unless it was a substantial factor in bringing about the harm. The important question presented, therefore, is whether McCauley's action in exceeding the 30 mile per hour speed limit was a legal cause or a cause-in-fact of the accident.
As we have already noted, Mrs. LaFleur entered the intersection when plaintiff's approaching car was less than 75 feet from her. The fact that the collision occurred before the front of her car reached the center of the intersecting street indicates to us that plaintiff's car was much closer to the intersection than the distance estimated by defendant's wife when the latter caused her car to enter it. We are convinced that under the facts and circumstances presented here, plaintiff would not have been able to avoid the collision even if he had been driving at the legal speed limit of 30 miles per hour.
Our conclusion is that the defendant has failed to establish that plaintiff's excessive speed was a proximate cause, a legal cause or a cause-in-fact of the accident. We find that plaintiff's action in violating the speed limit ordinance did not constitute actionable negligence barring him from recovery. See Whittington v. Gully, 164 So. 2d 57 (La.App.4th Cir. 1964); Courtault v. Government Employees Insurance Company, 169 So.2d 592 (La.App.4th Cir. 1964); Roy v. Broussard, 177 So.2d 786 (La.App.3d Cir. 1965).
Although we agree with the trial judge in his factual findings, we think he erred as a matter of law in concluding that plaintiff's negligence was a proximate and contributing cause of the accident barring him from recovery. We find that plaintiff was free from actionable negligence, and that he thus is entitled to recover from defendant.
Plaintiff testified that immediately after the accident occurred he suffered pain in his head and back, and that he was still suffering from headaches and backaches at the time of the trial, which took place almost 15 months after the accident. He was unemployed at the time the injuries were sustained, his sole support at that time being from public welfare.
He consulted Dr. Roderick Perron on the day the accident occurred. Later on the same day he also consulted Dr. Charles J. Aswell, a surgeon and general practitioner, and he was treated by that doctor for several months thereafter. At Dr. Aswell's suggestion, plaintiff was examined by Dr. Bordelon, of Opelousas. Dr. Perron and Dr. Bordelon were not called as witnesses at the trial, and no explanation was given by plaintiff as to why they were not subpoenaed or why their depositions were not obtained. We presume, therefore, that the testimony of each of these two doctors would have been unfavorable to plaintiff. Scully v. Louisiana Pine Products, Inc., 197 So.2d 406 (La. App.4th Cir. 1967); Thomas v. Aetna Casualty and Surety Company, 198 So.2d 460 (La.App.3d Cir. 1967); Slocum v. American Casualty Insurance Company, 189 So.2d 299 (La.App.3d Cir. 1966).
Dr. Aswell made a clinical and x-ray examination of plaintiff on the day of the accident. The x-ray examination was completely negative as to any injury, and the clinical examination also failed to reveal any sign of injury except that "he seemed to have some stiffness in the neck, and tenderness in the back." Although Dr. Aswell could find little or no objective *182 signs of injury, plaintiff's complaints were such that the doctor felt he might have sustained a concussion or possibly an injury to his liver. Because of these complaints the doctor hospitalized plaintiff for further observation. Further examinations revealed that plaintiff had no injury to his liver, but the doctor concluded that he had sustained "some ligament damage to the neck and back" and a minor cerebral concussion. He felt that both of these injuries were of a minor nature and that plaintiff should have recovered fully within a period of from six weeks to six months. Plaintiff, nevertheless, has continued to complain of pain in these areas of his body, and Dr. Aswell feels that his condition has now become "static."
Plaintiff was hospitalized for a period of more than one month. It is clear from Dr. Aswell's testimony, however, that the hospitalization was unnecessary for the treatment of his minor injuries, that he was placed in the hospital originally for observation and that he was allowed to remain there primarily because of his persistent complaints and partially because he requested it. Dr. Aswell explained, "* * * if a fellow keeps complaining every day you can't shove him out of the door." We realize that some period of hospitalization was justified to permit the treating physician to observe and examine plaintiff, but we have concluded that hospitalization for a period of one week would have been ample for that purpose.
It has been noted that very little weight can be attached to plaintiff's testimony. We also attach little weight to the complaints which he made to his treating physician, and since the diagnosis made by the doctor was based largely on these complaints we conclude that plaintiff has shown that the sustained only minor injuries as a result of this accident.
We think an award of $500.00 for the injuries which plaintiff sustained, including pain and suffering, would be adequate. In our opinion, plaintiff also is entitled to recover the hospital expenses incurred by him for the seven day period beginning on December 4 and continuing through December 10, 1965, amounting to $284.65, and Dr. Aswell's charges in the amount of $370.00.
For the reasons herein assigned, the judgment appealed from is reversed, and judgment is hereby rendered in favor of plaintiff, Gladney McCauley, and against defendant Elius LaFleur, for the sum of $1154.65, with legal interest thereon from date of judicial demand until paid, and for all costs of this suit. The costs of this appeal are assessed to defendant-appellee.
Reversed and rendered.

On Application for Rehearing.
En Banc. Rehearing denied.
FRUGE, J., votes for rehearing.